AMANDA E. COOK, Respondent, v. METROPOLI-
TAN LIFE INSURANCE COMPANY, Appellant.

**St. Louis Court of Appeals. Argued and Submitted March 16, 1910.
Opinion Filed June 28, 1910.**

1. LIFE INSURANCE: Payment of Premiums: Principal and
Agent: Agreement to Pay Premium by Agent of Insurer.
Where the agent of a life insurance company, who called on
an insured to collect a premium, declined to receive the pre-
mium tendered, on the ground that insured, who was sick, need-
ed it and that he, the agent, would see to the payment of it,
and when asked by insured and his wife if they should call
at the company's office and pay it said, "No, that he would
pay it for them, that it was his money and his affair," the
agent was acting in his own behalf and not for his company,
and offered himself as the agent of insured to make the pay-
ment and the latter accepted him as such agent, and hence,
where such agent failed to pay the amount of the premium
and the policy lapsed for non-payment, the insurance company
was not liable on the policy, after the death of insured.

Appeal from St. Louis City Circuit Court.—*Hon.
Eugene McQuillin*, Judge.

REVERSED.

*Nathan Frank, Richard A. Jones* and *Max W. Oli-
ver* for appellant.

This transaction claimed by plaintiff to have oc-
curred concerning this premium, was one merely per-
sonal between the insured, herself and Scott, not in the
latter's capacity of agent for the company and remedy
of respondent is not against appellant but rather against
the person with whom such agreement, if any, was made.
Dircks v. Ins. Co., 34 Mo. App. 31; Nichols, Shepard &
Co. v. Larkin, 79 Mo. 264; Life Assn. v. Parham, 80 Tex.
518; Pomeroy v. Ins. Co., 7 Pac. 295.

*Geo. L. Corlis, H. Ooffenbacher* and *F. H. Bacon* for respondent.

An agent of an insurance company having power to collect the premium is regarded as the *alter ego* of the company and his acts in relation to the premium, which he had authority to collect, will be binding upon the company. Much more will the company be bound when the agent is tendered the premium and refuses·to accept it as was this case. In the case of James v. Life Association, 148 Mo. App. 1; Crowder v. Casualty Co., 115 Mo. App. 535; Life Ins. Co. v. Fallow, 110 Tenn. 720; Wagaman v. Ins. Co., 85 S. W. 117; Knarston v. Ins. Co.; 124 Cal. 74; Life Insurance Co. v. Lesser, 126 Ala. 568.; Rutherford v. Ins. Co., 34 Ind. App. 531; Germania Ins. Co. v. Koehler, 168 Ill. 293; Ins. Co. v. Wolfe, 95 W. S. 326.

STATEMENT.—One Charles F. Cook held a policy in the defendant company, insuring the payment to plaintiff, if alive at the time of the death of Charles F. Cook, of the sum of $1000, plaintiff then being the wife and now the widow of said Charles F. Cook. The policy contained the usual stipulation that if payment of any installment of premium be not made when due, the policy shall be void and that the contract between the parties is completely set out in the policy and the application therefor and that none of its terms can be varied or modified or any forfeiture waived or premiums in arrears be received except by agreement in writing signed by either the president, vice-president, secretary or actuary, "whose authority for this purpose will not be delegated.; no other person has or will be given authority." The policy was written on the solicitation of an agent of the company at St. Louis, a Mr. Scott, and Mr. Scott was the party who had collected the premiums on it from time to time as they fell due. All the premiums had been paid on it by the insured, Scott hav-

ing called at the house of the insured and collected the money from him or his wife and left with them the receipt for that installment, the receipt being signed by the secretary of the company at its home office in New York. A premium falling due December 29, 1901, Mr. Scott called at the house of the insured to collect it. The insured was sick and his wife, the plaintiff, met Mr. Scott and asked if he had called to collect the insurance. He said, "Yes," and quoting from the testimony of plaintiff, respondent here, "I went in the other room and got the money and gave it to my husband to give him, and in the meantime Mr. Scott asked my husband if he had been sick, and I told my husband to give him the money and he offered it to Mr. Scott, and he said, 'No, you had better keep it, and I will pay it for you, and when you get back to work you can give it to me. You need not worry, I will pay it, and everything will be all right.'" She reiterated that after Mr. Scott asked her husband if he had been sick and when she told her husband to give Mr. Scott the money and he offered it to Mr. Scott, Mr. Scott said: "No, you had better keep it and I will pay it, and I will pay it for you, and when you get back to work you can give it to me. You need not worry, I will pay it, and everything will be all right." That her husband asked Scott if they should pay it to the company then and Scott said, "No, as it was his money, and not the company's." Mr. Scott had with him at this time when he called the receipt for the money. Witness (plaintiff) said she had never seen Mr. Scott after that but once; that he had never called for the money and that the next and only time she saw him afterwards he (Scott) had run past the house and she said to him, "Did you pay the dues," and he said "Yes," and for plaintiff not to worry; that it was all right. This occurred a month or so after December and was the last time she had talked to him; had never asked him anything more about it and had never seen him afterwards except when she went to the office of the in-

surance company with her attorney. The insured died in May, 1902, and no premiums had matured between December and that date. The December, 1901, premium was never paid. The company refusing payment, this suit was brought for the full amount of the policy, the above facts being in evidence for plaintiff at the trial before the court and a jury. ·

At the close of the testimony of plaintiff, defendant interposed a demurrer to the evidence which was overruled and exceptions saved. Whereupon defendant introduced Mr. Scott, the agent referred to, who testified to the effect that the conversation testified to by plaintiff had never taken place. The jury returned a verdict for plaintiff for the full amount of the policy. Defendant in due time filed its motion for a new trial which was overruled and exceptions saved and has brought the case here on appeal.

REYNOLDS, P. J. (after stating the facts).—It is argued by the learned counsel for the respondent that an agent of an insurance company, having power to collect the premiums, is regarded as the *alter ego* of the company and his acts in relation to the premium which he had authority to collect will be binding upon the company and that much more will the company be bound when the agent is tendered the premium and refuses to accept it as is claimed in the case at bar. That is really the point in the case and many authorities are cited in support of it. The trouble with this proposition is that it does not meet the facts in this case. The agent Scott, who called to collect this premium with the receipt in his hand and to whom the money was tendered, declined to receive it on the ground that the insured needed it and that he, Scott, would see to the payment of it and when he was asked by the plaintiff or her husband if they should call at the company's office and pay it, he said, "No, that he would pay it for them, that it was his money and his affair." This is prac-

tically, although not exactly, what he said. This effected two things, first, it was distinct knowledge to the insured and his wife that Scott, in saying this, was acting in his own behalf and not for his company, and in the second place that he made or offered himself as the agent of the insured and of his wife, to make the payment for them and in their behalf, and they accepted his agency. Assuming, as we must, that the testimony of the wife, plaintiff here, is entitled to the fullest credit, that testimony shows conclusively that she knew that Scott, in so acting, was not acting for the company but acting for her and for her husband. She and her husband made him their agent in the transaction. He was, so far as they were concerned, in a dual capacity. He came to collect and in that act represented his company. The policy itself carried specific notice to them that his powers were limited, that he had no power to extend time of payment. Nor did he undertake to do so. He undertook to pay for the insured. When Scott refused to accept the payment of the premium, he did it as an individual and in his character as an individual and friend of the insured and he undertook as that friend and agent to pay the money out of his own funds to his company. We are compelled to hold that under such a state of facts the company cannot be charged with his failure to discharge his duty to the insured, and that plaintiff must suffer the consequences of trusting to an agent that had been accepted as their own agent by the insured and plaintiff, for his failure to carry out what respondent testifies he agreed to do. The judgment must be and is reversed. All concur.