13084

## BEATY v. MASSACHUSETTS PROTECTIVE ASSOCIATION

### (158 S. E., 206)

 May, 1929. 

*Messrs. Haynsworth & Haynsworth* and *J. K. Hamblin,* for appellant, 

206

*Messrs. Hughes & Russell,* for respondent,

March 5, 1931.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, commenced in the Court of Common Pleas for Union County, February 12, 1929, is an action for the recovery of the sum of $3,000.00, together with interest thereon at the rate of 7 per cent. per annum from the 20th day of June, 1926, upon a policy of insurance issued upon the life of Robert W. Beaty, deceased, by the defendant, said policy bearing date October 30, 1925.

The plaintiff commenced an action against the defendant, in the same Court, on the said policy, November 23, 1926, on the same state of facts alleged in the complaint in the present action, but in the prayer of the complaint in the first action asked for $5,000.00 and interest, instead of $3,000.00 and interest, as asked for in the present action. The amount of the insurance stipulated in the policy is $5,000.00. Thereafter, the said cause was duly removed by the defendant to the United States District Court for the Western District of South Carolina, and the defendant filed an answer in said cause in the said United States District Court. Subsequently, December 15, 1928, on motion of plaintiff's attorneys, the said action was nonsuited and the complaint dismissed by order of the. United States District Judge. Thereafter the plaintiff filed the present suit, containing the same allegations, word for word, as contained in the complaint dismissed by the United States District Judge, except in the prayer of the present suit the plaintiff asks for $3,000.00 and interest, instead of $5,000.00 and interest. Within the time required by law, the defendant filed in the Court of Common Pleas for Union County proper notice, petition, and bond for the removal of this cause (the last suit instituted), to the United States District Court for the Western District of South Carolina. The matter of removal was heard by his Honor, Judge M. M. Mann, who issued an order refusing to grant an order of removal, "upon the ground that the prayer of the complaint being for only Three Thousand ($3,000.00) Dollars,

the cause was not removable," to which the defendant duly excepted.

The record discloses that the defendant, thereafter, filed its answer in the State Court, however, "reserving its rights to have said cause adjudicated by the United States District Court for the Western District of South Carolina." The case was tried before his Honor, Judge T. S. Sease, and a jury, in the Court of Common Pleas for Union County. When the case was called for trial the defendant stated that it appeared specially and made objection to the jurisdiction of the Court and to the trial by said Court "on ground that the case had been properly removed to the United States District Court for the Western District of South Carolina." This objection, his Honor, Judge Sease, overruled and ordered the case to trial. The result of the trial was a verdict for the plaintiff against the defendant in the sum of $3,612.39, the full amount sued for including interest. After the return of the verdict by the jury the defendant made a motion for a new trial, which motion the trial Judge refused, and from the entry of judgment on the verdict the defendant has appealed to this Court, pursuant to notice duly served.

As stated by the appellant's counsel, in their argument, the exceptions allege error as follows: In refusing an order of removal to the United States District Court for the Western District of South Carolina, in the admission of certain evidence, in refusing defendant's motion for a directed verdict, and in the charge to the jury; and, in the main, we shall consider the questions presented by the appeal in the order presented by appellant's counsel.

Can a party whose claim is based upon a liquidated demand of more than $3,000.00, by asking judgment for a lesser sum, prevent removal of the cause to the United States District Court?

When the allegations of the complaint are considered, it is clear that the plaintiff in the case at bar in the prayer of her complaint reduced the amount due her

for the purpose of preventing a removal of the cause to the United States District Court. Appellant takes the position that this should not be permitted, and cites in support of the position taken the following cases: *Burke & Aitcheson v. Adoue & Lobit,* 3 Tex. Civ. App., 494, 22 S. W., 824, 23 S. W., 91; *Cox, Hill & Thompson v. Stanton,* 58 Ga., 406; *Jennings v. Stripling,* 127 Ga., 778, 56 S. E., 1026, and *Moore & Co. v. Thomson,* 44 N. C., 221, 59 Am. Dec., 550. We are unable to agree with appellant's position, and think that the weight of authority supports the contrary view. Although under the allegations contained in the body of the complaint the plaintiff set up a cause of action upon which the plaintiff might be entitled to recover against the defendant the full amount of the policy, $5,000.00, together with interest thereon, in the prayer of her complaint she did not ask for that sum, but asked for the sum of $3,000.00, together with interest. In our opinion the plaintiff had the right to do this, it matters not what her purpose was. Even if it be conceded that she did it for the purpose of preventing a removal of the cause to the United States District Court the case would not be altered. But, of course, she will be bound by the judgment in the case, and could not afterwards maintain another action to recover on the policy, this action being prosecuted to a final conclusion. Just as a person would have the right to reduce the amount owing when suing on a note for the purpose of giving a Court of limited jurisdiction, jurisdiction in the case (*Catawba Mills v. Hood,* 42 S. C., 204, 20 S. E., 91), so has the plaintiff in this case, in our opinion, the right to reduce the amount the allegations contained in the body of her complaint, if established, would entitle her to recover by asking for a lesser amount in the prayer of the complaint. The right of removal is statutory and the conditions prescribed must be met to entitle a defendant to removal. One of the conditions to be met to entitle a defendant to have a cause removed to the United States District Court is that the amount sued for, exclusive

of interest and costs, exceeds the sum of $3,000.00. The amount in controversy, in the kind of case involved herein, so far as the amount of verdict that could be rendered is concerned and amount of judgment obtained, is determined by the amount asked for under the prayer of the complaint, and in the case at bar the plaintiff could not recover any greater sum than the amount demanded in the prayer of the complaint. As being in point to the question before us, we quote from the syllabus of the opinion of the Court in the case of *Iowa Central Railway Co. v. Bacon,* 236 U. S., 305, 35 S. Ct., 357, 59 L. Ed., 591, as follows: "A State Court did not lose jurisdiction of an action for death because the Federal Circuit Court to which a removal was sought made several orders continuing the case from term to term after the filing of the transcript in that Court, and finally dismissed the suit for want of prosecution, where, upon the face of the record, the suit was not a removable one, *as the prayer for recovery was for but $1,990.00 which amount the State Court decided was the limit of recovery, notwithstanding an allegation in the petition that the decedent's estate was damaged in the sum of $10,000.00.*" (Italics added.) Under the law at this time the jurisdictional amount is $3,000.00, exclusive of interest and costs, and the prayer of the complaint in the case at bar being for $3,000.00 together with interest, the cause was not a removable one. In this connection we also call attention to the following authorities: *Kentucky v. Powers,* 201 U. S., 1, 26 S. Ct., 387, 50 L. Ed., 633, 5 Ann. Cas., 692; *Jackson v. Railroad Co.,* 58 Miss., 648; *Elgin v. Marshall,* 106 U. S., 578, 1 S. Ct., 484, 27 L. Ed., 249; *Ray v. Southern Ry.,* 77 S. C., 103, 57 S. E., 636; *Smith v. Cox,* 83 S. C., 1, 65 S. E., 222; *Cumming v. Lawrence,* 87 S. C., 457, 69 S. E., 1090; *Edwards v. Johnson,* 90 S. C., 90, 72 S. E., 638.

It is true, this Court has repeatedly held that the plaintiff may obtain any relief appropriate to the case made by the pleadings and the evidence, without regard to the *form* of

the prayer for relief; that is, he will be given such relief as he may be entitled to notwithstanding that the prayer for relief is defective. Especially is this true in, an equity case. But this does not mean that a party instituting a suit cannot remit or waive so much of his claim as he sees fit, and such remittance or waiver amounts to an acknowledgment of payment for the amount so waived or remitted, for which an action could not afterwards be maintained. Such waiver or remittance may be set forth either in the body of the complaint or in the prayer for relief, either directly or indirectly. When the plaintiff in the prayer for relief asks for a smaller amount than that stipulated in the instrument sued on, it amounts to a waiver, and the plaintiff, as in the case at bar, cannot afterwards maintain an action for the amount so waived, but is bound thereby. In a suit on a note payable in installments, of course, the rule would not apply to installments not due at the time of the commencement of the action, but would only apply to the installments due at the time of the commencement of the action. In the case of *Ray v. Southern Ry.*, 77 S. C., 104, 57 S. E., 636, resort was had not only to the body of the complaint to ascertain the amount involved in the controversy but to the prayer for relief also. Our attention has been called to the cases of *Simpson v. McMillion*, 1 Nott & McC., 192; *Wells v. Reynolds*, 3 Brev., 407; *St. Amand v. Gerry*, 2 Nott & McC., 487, and *Bent's Ex'r v. Graves*, 3 McCord, 280, 15 Am. Dec., 632, which cases hold that a plaintiff cannot release a part of his claim or demand for the purpose of bringing a suit within an inferior jurisdiction. We deem it sufficient to state that, under our view, the rule declared in those cases is not now of force in this State. *Brunson v. Furtick*, 72 S. C., 582, 52 S. E., 424, 5 Ann. Cas., 307.

In our opinion Judge Mann was right in refusing to issue an order of removal of the cause to the United States District Court, and Judge Sease properly overruled defendant's objection to going to trial, and in proceeding with the trial

of the case pursued the only reasonable course before him. The exceptions on this phase of the case, 1, 2, 3, and 16 are overruled.

Under Exceptions 4 and 5 error is imputed to the trial Judge in admitting in evidence the conversations and correspondence between Walker A. Holt and D. C. Beaty (by mistake called W. C. Beaty in the exceptions).

An examination of the testimony convinces us that, as to the conversation between these parties, nothing is revealed that could possibly be prejudicial against the defendant. D. C. Beaty does not claim that Holt, who was the agent of the defendant, made any statement of consequence. In fact, from what D. C. Beaty testified Holt would not discuss the matter involved at all in the conversation had with him.

As to the correspondence between D. C. Beaty and Holt, concerning which reference is made under these Exceptions 4 and 5, we are unable to discover any error committed by the trial Judge. D. C. Beaty was a relative of Robert W. Beaty and after the death of Robert W. Beaty tried to get information concerning the insurance. We find no letter in the record from Holt to D. C. Beaty, but only a letter from D. C. Beaty to Holt. This letter by D. C. Beaty to Holt was intended as a reply to a letter written by Holt on the 9th of June to Robert W. Beaty, but which Robert W. Beaty did not have an opportunity to read, and it was opened, it appears, by his widow after his death, which occurred in an automobile accident, June 14, 1926. In the letter of D. C. Beaty to Holt, about which complaint is made, D. C. Beaty calls attention to the fact that Robert W. Beaty did not receive the letter, and explains why he did not receive it. In this letter mention is made that he (D. C. Beaty) had requested Holt to let him know about the insurance policy in question, and states that Holt has not furnished him the information requested; and in the letter D. C. Beaty also reminds Holt that he called him over telephone and read to

him the letter written by Holt to Robert W. Beaty, referred to above, and made mention of the fact that Holt in the 'phone conversation told him that his stenographer had written the letter, and called Holt's attention to the fact that the letter was signed by him (Holt). He also tells Holt that he thinks he should have given him the information requested, and inclosed a check for $36 payable to the order of Holt, covering the semiannual premium, and formally notified Holt, as the agent of the defendant, of the death of Robert W. Beaty, the insured, and related the manner in which his death occurred and where and when it occurred, and requested that he notify the defendant and transmit this information to the defendant. He further requested Holt to send him "Claimants Proof of Accidental Death," and requested a copy of the policy, for the reason that the original had not been located.

We fail to see wherein the defendant was prejudiced by the introduction of this letter, and think that the trial Judge committed no error in permitting it to be introduced.

In Exceptions 6 and 7 error is charged because the trial Judge admitted in evidence certain of the correspondence between J. G. Hughes, attorney for the plaintiff, and the Massachusetts Protective Association, defendant herein. The correspondence in question here consists of letters written by Mr. Hughes, as attorney for the plaintiff, to the defendant for the purpose of procuring claim forms for making out claim based on the policy and replies by the officer of the defendant company refusing to send the same. It is contended by the appellant that these letters were purely argumentative, possessed no evidentiary value, and were prejudicial to the rights of the defendant. We agree with the appellant to the extent that this correspondence was in part of an argumentative nature, but we do not think it was prejudicial, and think the exceptions should be overruled.

With regard to the question raised as to the competency of the letter of June 9th, from Holt, the agent of the defendant, to Robert W. Beaty, the insured, which was not opened until after Beaty's death, in our opinion it was competent for the purpose of showing or tending to show that at the time the letter was written it was not the purpose of the insurance company, acting through said agent, to enforce the forfeiture provision of the contract for failure to pay the premium at that time, and also for the purpose of showing the conduct of the insurance company, acting through its said agent, in regard to the contract in question.

Defendant's motion for a directed verdict was based upon the following grounds: "That the uncontradicted testimony shows that a premium on this policy became due on June 1st, 1926, that that premium was not paid by the deceased, and that under the terms of the contract of insurance or policy, the contract or policy terminated on June 1st, 1926; that the policy or contract expressly provides the method by which it may be reinstated or revived from time to time, that is, by the payment of the premiums then due. But the policy also expressly provides that even when so reinstated the reinstatement shall become effective as of the date when the premium is received by the Company, and of course, shall not cover any accident or injuries prior thereto."

According to the record before the Court, the policy in question was dated October 30, 1925, signed by the officers at the home office of the company, and countersigned at Spartanburg, S. C., November 10, 1925, by W. A. Holt, resident agent. The contract provided that the premium on the policy should be $18.00 per quarter, payable in advance on or before the 1st day of March, June, September, and December of each year. It contained no grace period provision. It is the contention of the appellant that a premium on the policy became due on June 1, 1926, which was not paid by the deceased, and that the policy, under its terms, terminated on that date, June 1, 1926. It

clearly appears from the record that W. A. Holt was the resident agent of the insurance company in question; that he received applications for insurance for the company, collected the premiums and remitted same to the company, countersigned the policies and delivered same to the applicants; at least, the record is clear that Holt did that in this case, and so far as the record discloses, the company had no other agent in this State at the time in question. The record discloses that the insurance company mailed to the insured a notice, dated May 10, 1926, calling attention to premium being due June 1st and stating that the same should be paid to "Walker A. Holt, Box 533, Spartanburg, S. C." Prior to sending this notice, the said Holt signing as "Walker A. Holt, Special Agent," wrote a letter to the insured, dated April 2, 1926, in the following language: "It seems that you have forgotten about me altogether as I felt sure that you would send me the little check for only $46.67, which has been standing so long. I wish I could explain to you just what an asset you have in the M. P. A. policy you hold in our Association. The premium is so small I am sure you could drop this in the mail to me which I would appreciate more than I can explain to you at this time."

The correspondence introduced in evidence does not fully disclose just what agreement there was between Holt and the insured, but, according to the testimony of Holt, Holt personally advanced the premium money to the company for the insured up to June 1, 1926, and there is no question that the company received the same. But there is no proof that the insured or any one for him paid any amount to the insurance company on or after June 1, 1926, and, as we view the record, no one offered to pay the premium owing until after the death of the insured, which occurred in an automobile accident June 14, 1926.

On June 9, 1926, Holt, as special agent of the company wrote to the insured the following letter:

"Spartanburg, S. C., June 9, 1926.
"Mr. Robert W. Beatty,
 "Whitmire, S. C.
 "Route 2,
"Dear Sir:

"Please advise how you want me to pay your further M. P. A. premiums. You will recall that I paid them semi-annually for you last year. I think that I have written you several letters concerning your premium, but perhaps you have been very busy and haven't had time to answer them.

"Yours very truly,

"(Sd.) W. A. Holt,
 "Walter A. Holt, Spe. Agt.,
 "Box 533,
 "Spartanburg, S. C."

This letter was not received by the insured. He was away from home at the time the letter reached there, and was called to Union, S. C., upon his return, on which latter trip he was killed, June 14, 1926. After the insured's death this letter was found with other mail and was opened by his wife some time after his death. Under this state of facts, in our opinion, the defendant's motion for direction of a verdict should have been granted.

It is therefore the judgment of this Court that the judgment of the Circuit Court be reversed, and the case remanded for entry of judgment for the defendant under Rule 27 of this Court.

Mr. Chief Justice Blease and Mr. Justice Stabler and Mr. Acting Associate Justice Mendel L. Smith concur in result.

Mr. Justice Cothran (dissenting and concurring) : I dissent from so much of this opinion as holds that the motions of the defendant to remove the case to the Federal Court were properly refused. The jurisdiction of the State Court being sustained by a majority of the Court, I concur in so much of the opinion as holds that the defendant's mo-

tion for a directed verdict should have been sustained and in remanding the case to the Circuit Court for the entry of judgment in favor of the defendant under Rule 27. See opinion herewith filed.

MR. JUSTICE COTHRAN (dissenting and concurring) : Action upon a policy of insurance in the sum of $5,000.00, upon the life of Robert W. Beaty, payable to his estate, issued October 30, 1925; his death in an automobile accident occurred on June 14, 1926. The policy called for a premium of $18.00 per quarter, payable in advance on or before the 1st days of March, June, September, and December of each year.

The insured paid no premium at all on the policy. When it was issued to him he stated to defendant's agent, W. A. Holt, that he was in financial straits, and Holt advanced the money to pay the premium from October 30, 1925, to June 1, 1926. The premium which fell due on June 1, 1926, was not paid.

On June 9, 1926, Holt wrote insured asking him how he wanted him to pay his further premiums and calling his attention to the fact that several letters had previously been written him relative to the premium he had advanced. This letter was never received by insured. He had been away from home for several days about that time, and was called to Union immediately upon his return, on which trip he was killed on June 14th. This letter was with certain of his mail which he never saw, and was opened by his wife after his death.

On June 19, 1926, five days after the death of insured and nineteen days after the policy had lapsed, Dudley Beaty, a relative of insured, forwarded to Holt his personal check for $36.00 to cover the semiannual premium and notified Holt of insured's death.

Holt submitted this letter and check to the home office of appellant, and on June 25th the check was returned to Beaty

with the statement that the policy had lapsed on June 1st by reason of the nonpayment of the premium due on that date.

On November 23, 1926, the plaintiff began an action in the Court of Common Pleas for Union County seeking recovery of $5,000.00 under the policy. Within due time the defendant removed the cause to the United States District Court. Subsequently, on December 15, 1928, on motion of plaintiff's attorneys, this action was nonsuited and the complaint dismissed.

On February 12, 1929, the plaintiff filed the present suit in the Court of Common Pleas for Union County, the complaint being identical with the complaint in the former action with the exception that judgment in the sum of $3,000.00 was asked. Within the time required by law the defendant filed in the office of the Clerk of Court of Common Pleas for Union County the necessary papers for the removal of the case to the United States District Court. The Circuit Judge refused to grant an order of removal upon the ground that the prayer of the complaint being for only $3,000.00, the cause was not removable, to which the defendant duly excepted.

The defendant reserving its right to have the matter adjudicated by the United States District Court filed an answer admitting the issuance of the policy, but alleging that the contract of insurance ceased and determined on June 1, 1926, by reason of the failure of insured to pay the premium due on that date.

The policy provided that in the event it should determine by reason of default in the payment of any premium, "the subsequent acceptance of a premium by the Association, or by any of its duly authorized agents, shall reinstate the policy, but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

At some time prior to March 28, 1929, the defendant made a motion before his Honor, Judge Mann, for an order

removing the case to the Federal Court, based upon the petition and bond for removal and affidavits filed and served. On that day his Honor signed an order refusing the motion upon the ground that the right of removal, so far as jurisdictional amount was concerned, was controlled by the sum for which the plaintiff demanded judgment, which was $3,000.00; that the plaintiff had the right thus to waive the excess of $5,000.00 over $3,000.00. To this order the defendant filed exception.

Later the case came on for trial before his Honor, Judge Sease, and a jury. Upon call the defendant appeared specially and made objection to the jurisdiction of the Court and to the trial by said Court on the ground that the case had been properly removed to the United States District Court. The presiding Judge overruled the objection and ordered the case tried.

At the close of all of the testimony the defendant made a motion for a directed verdict in its favor upon the following ground: "That the uncontradicted testimony shows that a premium on this policy became due on June 1st, 1926; that that premium was not paid by the deceased, and that under the terms of the contract of insurance or policy, the contract or policy terminated on June 1st, 1926; that the policy or contract expressly provides the method by which it may be reinstated or revived from time to time, that is, by the payment of the premiums then due. But the policy also expressly provides that even when so reinstated the reinstatement shall become effective as of the date when the premium is received by the Company, and, of course, shall not cover any accident or injuries prior thereto."

The motion was refused, and the jury thereafter rendered a verdict in favor of the plaintiff for $3,612.39. From the judgment entered thereon the defendant has appealed.

I shall first discuss the preliminary and controlling issue: "Can a party whose claim is based upon a liquidated demand of more than $3,000.00 by asking judgment for a lesser

sum prevent removal of the cause to the United States District Court?"

The case of *Iowa Central Ry. Co. v. Bacon*, 236 U. S., 305, 35 S. Ct., 357, 59 L. Ed., 591, is cited as controlling the issue in favor of the affirmative. I do not think it does; on the contrary, accepting the test therein laid down, it appears to me to be decisive in favor of the negative, when taken in connection with the long line of the decisions of this Court which I shall cite.

The case was one in tort, for damages, on account of the alleged wrongful killing of the plaintiff's intestate; the damages laid in the complaint were $10,000.00, but the prayer for judgment was for $2,000.00, an amount which at that time was the limit of Federal jurisdiction, that is to say, the amount involved must have been in excess of $2,000.00 in order that the Federal Court should take jurisdiction and justify a removal to that Court. The syllabus of the case broadly and unqualifiedly declares: "Although the petition may allege that plaintiff sustained damages in excess of two thousand dollars, if the prayer for recovery is for less than that sum, the jurisdictional amount is not involved, and the filing of a petition and bond does not effect a removal of the case."

But the Court in its opinion gives a very different complexion to the declaration. There it is said: "It was, of course, essential to the removal of the case that the amount in controversy should have been sufficient to give the Federal Court jurisdiction; that is to say, $2,000.00, exclusive of interest and costs. *The State Court had authority to determine the effect of the prayer to the petition, and it decided that, under the petition, no more than the amount prayed for could be recovered in the action, notwithstanding the statement that the estate had suffered damage in the sum of $10,-000.00.*"

If it can be said that the State Court of South Carolina, having authority to determine the effect of the prayer to a

complaint, has decided that under a complaint no more than the amount for which judgment is prayed can be recovered in an action, as was done in the Iowa Courts, the *Bacon case* would be conclusive.

On the contrary, the Courts of this State have decided over and over again that the prayer of a complaint is no part of it and may be disregarded; that it is the same as if there had been no prayer.

The following quotations from our own decided cases I think settle the question:

*Balle v. Moseley,* 13 S. C., 439: "The demand for relief is not part of the cause of action (Pom. on Rem., § 580)."

*Williams v. Irby,* 16 S. C., 371: "* * * it is well settled that the demand for relief forms no part of the cause of action, and does not even give character to it, inasmuch as the true theory of the Code is to give a party such a judgment as his allegations and proofs entitle him to, no matter what may be the form of the demand for relief." Citing Pom. Rem., § 580, and *Balle v. Moseley,* 13 S. C., 439.

*Butler v. Williams,* 27 S. C., 221, 3 S. E., 211, 213: "But when it is remembered that the demand for relief constitutes no part of the complaint (*Balle v. Moseley,* 13 S. C., 439), we do not see how this can affect the question. The Court renders judgment appropriate to the case made by the complaint, and established by the proofs, without regard to the prayer for relief. * * *"

*Westlake v. Farrow,* 34 S. C., 270, 13 S. E., 469, 470: "* * * it is well settled that the demand for relief constitutes no part of the cause of action." (Citing *Balle v. Moseley,* 13 S. C., 439; *Levi v. Legg,* 23 S. C., 282; Pom. Rem., Section 580). Continuing, the Court said: "* * * it is very obvious that the prayer for relief should have no influence in determining the nature of the cause of action set forth in the complaint."

*McMakin v. Fowler,* 34 S. C., 281, 13 S. E., 534, 536: "* * * for nothing is better settled than that the de-

mand for relief constitutes no part of the cause of action, and cannot give character to it." (Citing the cases above referred to.)

*Lassiter v. Okeetee Club,* 70 S. C., 102, 49 S. E., 224, 226: "In the case of *Balle v. Moseley,* 13 S. C., 439, this Court has held that the omission of a prayer for relief in the complaint does not make it demurrable. In the case just cited it is held that 'demand for relief is not part of the cause of action. Pom. on Rem., § 580.' "

*Mortgage Loan Co. v. Townsend,* 156 S. C., 203, 152 S. E., 878, 886: "Since the adoption of the Code, that tendency has continued, until our Court has gone so far as to announce that the prayer of the complaint is no part thereof." Citing *Balle v. Moseley,* 13 S. C., 439; *Williams v. Workman,* 113 S. C., 487, 101 S. E., 833; *First National Co. v. Strak,* 148 S. C., 410, 146 S. E., 240; *Atlantic Coast Lumber Corporation v. Morrison,* 152 S. C., 305, 149 S. E., 243.

*Sheppard v. Green,* 48 S. C., 165, 26 S. E., 224, 228: "Besides, this apparent defect appears only in the prayer for relief, and it is well settled that the plaintiffs may obtain any relief appropriate to the case made by the pleadings and evidence, without regard to the form of the prayer for relief."

In *Williams v. Workman,* 113 S. C., 487, 101 S. E., 833, the complaint alleged damages by reason of the detention of an automobile in the sum of $2,500.00; the prayer for judgment was for the possession of the automobile worth $1,-250.00 and for damages in the sum of $2,500.00. The Court held that the prayer of the complaint was no part of it and the amount referred to in the complaint, $2,500.00, justified the jurisdiction of the County Court, which was limited to $3,000.00, notwithstanding the fact that according to the prayer for judgment the amount involved was $3,750.00. In the opinion of the Court it was stated: "It needs no citation of authority to show that the prayer of the complaint is no part of the complaint." It would appear therefore that if the prayer of the complaint cannot be resorted to to oust the

Court's jurisdiction it should not be resorted to in order to sustain it.

The citation from Pomeroy (2d Ed.), § 580, fully sustains the conclusion of the Court based upon it as above set forth.

In *Simpson v. McMillion,* 1 Nott & McC., 192, the Court said: "It has been often determined, that a plaintiff cannot release a part of his demand to bring his case within an inferior jurisdiction."

See, also, *Wells v. Reynolds,* 3 Brev., 407; *St. Amand v. Gerry,* 2 Nott & McC., 487; *Bent's Ex'r v. Graves,* 3 McCord, 280, 15 Am. Dec., 632.

The cases of *Cavander v. Ward,* 28 S. C., 472, 6 S. E., 302; *Catawba Mills v. Hood,* 42 S. C., 204, 20 S. E., 91; *Brunson v. Furtick,* 72 S. C., 579, 52 S. E., 424, 5 Ann. Cas., 307, do not affect the conclusion above reached, for they involve the construction of a special statute relating to the jurisdiction of magistrate Courts which is controlled by the "amount claimed," and not as in the present case, where the jurisdiction is controlled by the amount or matter in controversy which, of course, has reference to the complaint and not the prayer for judgment. Under the complaint in this case, upon trial in the Circuit Court the plaintiff might have recovered the full amount of the policy regardless of the prayer.

I think, too, that there is a difference amounting to a distinction between complaints upon liquidated demands and complaints upon unliquidated demands. The present case is one based upon a liquidated demand supported by a contract of insurance naming a specific sum.

I think therefore that the Circuit Court should have held that the case, notwithstanding the effort of the plaintiff to avoid the jurisdiction of the Federal Court, was still in that Court; that the order of removal should have been granted by his Honor, Judge Mann, and that his Honor, Judge Sease, should not have proceeded with the trial of the case.

I approach next the motion of the defendant for a directed verdict in its favor:

It appears that when the policy was issued and delivered to the insured he was in financial straits and was unable to pay the initial premium or any part of it. By an arrangement with the agent of the company, the initial payment was advanced by the agent which carried the policy to June 1, 1926. The agent, it seems, remitted to the company the amount of the premium less his commissions and held the personal obligation, apparently in parol, of the insured to reimburse himself for the advance. No part of it was paid by the insured to the agent. No question appears to have been made but that this arrangement carried the policy in force up to June 1, 1926, when the next premium was due.

On May 10, 1926, the home office in Worcester, Mass., notified the insured that a premium upon the policy was due on June 1st, giving him the option of making an annual, semiannual, or quarterly payment. To the notification he paid no attention.

Prior to this, in April, 1926, the agent, as a personal matter between him and the insured, called upon him by letter for the advance that he had made when the policy was issued; to which also he paid no attention.

On June 9, 1926, eight days after the premium of June 1st was due, the agent wrote the insured as follows: "Please advise how you want me to pay your further M. P. A. premiums. You will recall that I paid them semi-annually for you last year. I think that I have written you several letters concerning your premium, but perhaps you have been very busy and haven't had time to answer them."

Mrs. Beaty testified that this letter of June 9th was found with the mail of the insured after his death, unopened; he had never seen it, and of course, could not have been so influenced by its contents as to present the essential element of waiver or estoppel.

But if it should be assumed that the insured received the letter of June 9th, and upon account of it refrained from taking action for his protection, I think that there would be nothing in it indicative of a purpose on the part of the company either to waive the forfeiture for nonpayment of the premium on June 1st or to reinstate the policy.

The letter must be read in connection with the preceding facts: Beaty had been unable to pay the initial premium and the agent practically advanced to him the funds necessary to carry the policy in force until June 1, 1926; it is conceded by counsel for the insurance company that if Beaty had died between November, 1925, and June 1, 1926, the company would have been liable for the loss. In spite of frequent reminders of his personal obligation to the agent to reimburse him for the advance, Beaty had been neglectful of it. The agent was therefore personally interested in having the policy reinstated which doubtless would have been done if Beaty had received the letter and acted upon it. At best, it was only an offer of the agent to do as he had done with the initial premium—advance the money to Beaty personally and account to the company for the premium less his commissions. At that time the policy had lapsed. If Beaty had received the letter, he would not have had an indefinite time to avail himself of the offer; the provisions of the policy would have become effective: "If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of a premium by the Association or by any of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

If the offer had been received and accepted by Beaty and the agent had failed to carry it out, the agreement would not have been binding upon the company.

In 32 C. J., 1312, it is said: "Where the collecting agent of the Company undertakes to pay a premium from his own

funds to the Company, the Company cannot be charged by reason of his failure to do so."

In *Public Sav. Ins. Co. v. Manning*, 61 Ind. App., 239, 111 N. E., 945, 946, the Court said:

"The arrangement by which Kratzer [the agent] agreed temporarily to pay the premiums on the policies was not binding on appellant. That was a mere private agreement between appellee and Kratzer whereby the latter became nothing more than appellee's agent."

See, also, *Wood v. Ins. Co.*, 107 S. C., 536, 93 S. E., 197.

In *Cook v. Ins. Co.*, 150 Mo. App., 299, 134 S. W., 13, 14, the agent refused to accept a premium tendered him, telling insured that he would take care of the premium for him. The Court said: "When Scott refused to accept the payment of the premium, he did it as an individual and in his character as an individual and friend of the insured, and he undertook as that friend as agent to pay the money out of his own funds to his company. We are compelled to hold that under such a state of facts the company cannot be charged with his failure to discharge his duty to the insured, and that plaintiff must suffer the consequences of trusting to an agent that had been accepted as their own agent by the insured and plaintiff for his failure to carry out what respondent testifies he agreed to do."

But a conclusive answer to the contention that the unread letter of June 9th was evidence of waiver or estoppel is found in the case of *Perkins v. Ins. Co.*, 93 S. C., 88, 76 S. E., 29, 30. In that case the premium for 1911 was not paid by January 1, when it was due; the company notified the insured on January 5 of the fact and offered, in accordance with the grace clause, to accept it if paid by February 1st; on January 28, a similar notice was mailed; no attention was paid to either notice and the time limit ran out on February 1st; on February 2 the company wrote to the insured offering to reinstate the policy upon certain conditions to be complied with by February 10; this letter was opened by the

beneficiary on the 4th, a few hours after the death of the insured. The letter contained an offer that if the insured could not pay the premium in cash the company would accept his several notes in installments payable on time. The plaintiff contended that this letter was evidence of a waiver of the forfeiture by failure to pay the premium by February, 1st. In dismissing the contention the Court, by Mr. Justice Watts (later Chief Justice), said: "To hold under the facts here that there was a legal waiver would make it unsafe for a creditor to ever extend a debt or indulge a debtor. Certainly an offer to reinstate on certain conditions, as was made in this case, cannot be regarded as a waiver, especially if the conditions are not complied with, and there is no contention here that the conditions were complied with. The letter of February 2, 1911, of the company to the insured by no twisting of words or strained construction, could be regarded as a waiver of the forfeiture. The policy itself provides by its own terms that it shall lapse for nonpayment of premiums one month after January 1, 1911. Hence it was a dead contract, and not a live one after February 1, 1911. * * * Certainly this liberal provision in the policy ought not to be twisted and tortured into a further imaginary allowance of time not stated or limited in any way in which insured should be at liberty not to pay any premium at all, if he lived, and at the same time be fully covered by insurance if he died. The mere statement of such a one-sided suggestion is its own refutation. The letter on February 2, 1911, in no way altered the existing situation or created any new rights in plaintiff until acted on by the insured or plaintiff in conformity with its terms. One of the terms in said letter was the payment of a premium in a certain manner on or before February 10, 1911. No attempt to do this was made until several days after that date."

The Court in the case of *Lautz v. Vermont Life Ins. Co.*, 139 Pa., 546, 21 A., 80, 10 L. R. A., 577, 23 Am. St. Rep., 202, cites the case of *Marvin v. Universal Life Ins. Co.*, 85

N. Y., 282, 39 Am. Rep., 657, and observes: "This case is valuable for the further reason that it shows very clearly the ground of the distinction between a promise to extend the time of payment made before the time of such payment, and one made after the default. In the former instance the assured may have relied upon the promise and allowed the time to slip by, whereas without such promise he might have procured the money and paid the premium. * * * But where a promise is made after the default the assured has not been misled or injured in any manner. He has allowed his policy to lapse by his own neglect; it can only be restored by the consent of the company, and he has no reason to suppose that if he dies before the matter is perfected by the payment and acceptance of the premium, the company will pay as in the case of a live policy."

In *Columbian Nat. Life Ins. Co. v. Morey* (C. C. A.), 26 F. (2d), 580, 582, the question of waiver was based upon a letter written insured five days after the lapse of his policy. Insured died about 9 o'clock the night the letter was written, and there was no evidence that he ever received or heard of it. The Court, in discussing the letter as evidence of the company's intention to waive the lapse, said:

"But waiver of a clear legal right arising under a contract requires more than mere evidence of intention; it requires consideration or estoppel. * * * In *Globe Mut. L. Ins. Co. v. Wolff*, 95 U. S., 326, 333, 24 L. Ed., 387, the Court said:

" 'The doctrine of waiver, as asserted against insurance companies to avoid the strict enforcement of conditions contained in their policies, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce action in reliance upon it, and where it would operate as a fraud upon the assured if they were afterwards allowed to disavow their conduct and enforce the conditions.' * * *

"As already indicated, there is not a scintilla of evidence that Arsanault either acted upon or even received the letter of December 4 containing this conditional offer. There was neither consideration nor estoppel. The company's right to claim a lapse stood exactly the same when Arsanault died at 9 o'clock on December 5 as before the letter was written and mailed."

In *Lautz v. Ins. Co.*, 139 Pa., 546, 21 A., 80, 10 L. R. A., 577, 23 Am. St. Rep., 202, it was held, quoting syllabus: "A promise of the agent made after default in the payment of the premium had occurred, to receive the premium up to a subsequent day, is a *nudum pactum;* a lapsed policy can only be restored to life, so far as the assured is concerned, by the actual payment and acceptance of the premium, or by a contract based upon a sufficient consideration."

I think therefore that if it should be held that the State Court had jurisdiction of the case the defendant's motion for a directed verdict should have been granted.

In the light of these conclusions, I do not deem it necessary to consider the other exceptions.