## McGRATH v. PIEDMONT MUTUAL INS. CO.

1. CORPORATION—JURISDICTION—INSURANCE.—A domestic corporation, unless otherwise provided in its charter, may be sued in any Court in the State in which it does business, if it is authorized to do business throughout the State. It is not essential in the case of mutual insurance companies that the agent of the company should have in the county an established office maintained at the expense of the corporation, but the Court of a county has jurisdiction in which there is an agent authorized to solicit applications for insurance and membership, to collect premiums, give receipts and collect information.

2. EVIDENCE—INSURANCE.—Where written application for insurance specifically provides there is no contract of insurance until the application is accepted by home office subject to charter and by-laws of the company, and where charter provides insurance shall be issued only to members, it is incompetent to admit declarations of soliciting agent that insurance began from date of receipt of premium.

3. CHARGE.—Under proof in this case the instruction that the mere receiving through the mails and filing in the office may or may not be the acceptance of the application is an instruction on the sufficiency or weight of evidence.

Before KLUGH, J., Abbeville.    Reversed.

Action by Sallie McGrath against Piedmont Mutual Insurance Company. From judgment for defendant, plaintiff appeals.

*Messrs. Carlisle & Carlisle,* for appellant, cite: *Appellant can be sued only in county where its principal office is:* 65 S. C., 326; 47 S. C., 388; 2 Rich., 512; 1 Strob., 72; 151 U. S., 496; 25 S. C., 385; 28 S. C., 313. *All conversations leading up to written application is merged in it:* 61 S. C., 321; 68 S. C., 388.

*Mr. Wm. N. Graydon,* contra, cites: *Corporation may be sued in any county where it does business:* 1 Strob., 70; 65 S. C., 326. *Matter collateral to writing may be shown by parol:* 59 S. C., 467; 43 S. C., 528. *Declarations of agent when taking an application is binding on the company:* 48 S. C., 195; 55 S. C., 594; 36 S. C., 333.

April 7, 1906. The opinion of the Court was delivered by

Mr. Justice Jones. The plaintiff brought this action on an alleged contract of fire insurance and recovered judgment against defendant for $200.

1. The defendant first raises the question whether the Circuit Court for Abbeville County had jurisdiction to try this case. The summons was served upon one J. P. Smith at McCormick, in Abbeville County, as an agent of defendant company, but did not reach the principal office of defendant corporation in Spartanburg, S. C., until after the time for answering had expired. Judgment by default was taken against defendant and thereafter a motion was made before special Judge McDonald for leave to answer on two grounds: (1) that the Court in Abbeville County had no jurisdiction, as defendant corporation was a resident of Spartanburg County and did not maintain any office for transacting business in Abbeville County, (2) that defendant's neglect to answer was excusable. Judge McDonald sustained the second ground and opened the default and granted defendant leave to answer within twenty days; but as to the first ground Judge McDonald, under authority of *Glaize* v. *R. R. Co.,* 1 Strob., 70, and *Boyd* v. *R. R. Co.,* 65 S. C., 326, 43 S. E., 819, held that the Court for Abbeville County had jurisdiction. The defendant answered to the merits, but, on the trial before Judge Klugh and a jury and at the close of the testimony, again raised the question of the Court's jurisdiction on a motion for nonsuit. Judge Klugh declined to grant the motion.

Jurisdiction has two aspects, jurisdiction of the person

and jurisdiction of the subject matter.    In so far as juris-
diction of the person is concerned, it is settled by numerous
cases that a general appearance or answer to the merits is a
waiver of such objection to jurisdiction.    *Garrett* v. *Her-
ring Co.*, 69 S. C., 278.    When, however, jurisdiction of
the subject matter is concerned, it is not waived by appear-
ance and answer but may be urged at any time.    *Ware* v.
*Henderson*, 25 S. C., 387; *Bell* v. *Fludd*, 28 S. C., 314,
5 S. E., 810.    The last cited cases show that the present
question relates to jurisdiction of the subject matter, the
power of the Court for Abbeville County to hear the cause,
notwithstanding jurisdiction of the person was acquired by
the service of process upon defendant's alleged agent in
Abbeville County or by the answer to the merits.    This
action falls under sec. 146 of the Code of Civil Procedure,
which provides: "In all other cases the action shall be tried
in the county in which the defendant resides at the time of
the commencement of the action, etc."    The cases of *Ware*
v. *Henderson* and *Bell* v. *Fludd, supra*, show that this pro-
vision is imperative, and that a judgment rendered in the
wrong county may be set aside as without jurisdiction.

The real question, then, is, did the defendant reside in
Abbeville County at the commencement of the action?    The
defendant is a domestic corporation chartered as a mutual
protection association under section 1912 *et seq.*, vol. 1, Code
of Laws.    The statute requires that the certificate of asso-
ciation (which upon compliance with requirements becomes
its charter) shall state, among other things, the place which
shall be known and regarded as its principal place of business
and head office, and in defendant's charter, Spartanburg,
S. C., is designated as the principal place of business and
head office.    But the statute does not provide that the cor-
poration shall be sued only in the county where its principal
office is, but, on the contrary, provides that it "may sue and
be sued and plead and be impleaded in all Courts of law
and equity."    In the absence of a statute requiring suit in
the county where the principal office of a corporation is lo-

cated, a domestic corporation, with power to conduct its business throughout the State, may be sued in any county where it may be deemed a resident. The case of *Cromwell v. Ins. Co.*, 2 Rich., 512, holds that a domestic corporation has its place of legal residence where its corporate business is done, and in that case the jurisdiction of the City Court of Charleston was maintained because the defendant insurance company had an office and did business in the city of Charleston. The case of *Glaize v. S. C. R. R. Co.*, 1 Strob., 70, holds that the legal residence of a corporation is not confined to the locality of its principal office of business, but extends to the territorial limits of the jurisdiction which granted its charter, which, for judicial purposes, defines its locality; that if a local residence can be affirmed of it, such residence is obviously where it is actively present in the operation of its enterprise. In that case the jurisdiction of the Court in Richland County, where the defendant had an office and did business, was maintained, although defendant's principal office was in Charleston. So, in *Tobin v. Chester and Lenoir R. R. Co.*, 47 S. C., 387, 25 S. E., 283, it was held that a suit brought against the defendant company in Barnwell County, where it had no office or roadbed and did no business, was properly transferred for trial to Chester County, where it had an office and agent and did business, as a county of its residence. In the case of *Boyd v. R. R. Co.*, 65 S. C., 326, 43 S. E., 817, it was held, that the Court in Greenville County had jurisdiction, although defendant's line was not located in that county and although the charter designated Spartanburg as the principal place of business, because it appeared that the president and assistant auditor resided in Greenville and had their offices there. It would seem, therefore, that in this State, whatever may be the rule elsewhere, a domestic corporation resides in any county where it maintains an agent and transacts its corporate business.

It appears that J. P. Smith, upon whom process was served in this case, resided in Abbeville County, was the

agent of the defendant company to solicit applications for insurance and membership in defendant company, to collect premiums and give receipt therefor, and aid the company in procuring the necessary information. The application in this case was marked "witnessed and approved by J. P. Smith, agent." Upon acceptance of such an application at the principal or home office in Spartanburg, a policy of insurance would be issued on the property of the applicant in Abbeville County, and thereupon the applicant would become a member of the association, liable for annual premiums and pro rata assessments, and, by the terms of the contract, the company is given a lien therefor on the real and personal property of the applicant. It is not essential that the agent Smith should have in Abbeville County an established office room with necessary furniture maintained at the expense of the defendant company. It is sufficient if he resides in Abbeville County and is an agent of the defendant in the conduct of its business. We conclude that the Abbeville Court had jurisdiction.

2. The next question we notice is whether the Court erred in allowing witnesses to testify as to declarations made by J. P. Smith, at the time he received the application for membership and insurance and receipted for the premium, that the property was insured from the time receipt was given. No written contract or policy of insurance was issued or delivered in this case and the plaintiff sought to recover upon a contract based upon the receipt of the application, the premium, the declaration of the agent Smith, and other circumstances from which acceptance was sought to be inferred. We do not think this evidence was competent. The written application signed by plaintiff expressly provided, "there is no contract of insurance until the application is accepted by the home office in Spartanburg, subject to the charter, by-laws and rules governing the company." Under the statute governing the association, insurance could only be issued to members of the association. There was no evidence that Smith, though authorized to

solicit applications and forward to the office in Spartanburg and to receive and forward premiums, had any authority whatever to make or deliver contracts of insurance, and, therefore, his declarations could not be admissible to show a contract he had no power to make. Furthermore, the plaintiff must be held to have known Smith had no such authority, as the declarations were in conflict with the express stipulation in the application requiring acceptance at the home office as essential to such contract.

3. The eighth exception alleges error in charging the jury: "The mere receiving through the mail and filing in the office may or may not be the acceptance of the application." It is objected that this was an intimation to the jury that the mere receiving and filing of the application may be held by them as an acceptance and was, therefore, a charge on the facts. We are impressed that this exception should be sustained. The charge touched the vital issue in the case and was calculated to create a wrong impression harmful to the defendant, and which the charge as a whole did not remedy. The application, before acceptance, is a mere proposal for membership and insurance, and must necessarily be mailed or delivered to the defendant's proper agents for filing, before it can be acted upon and accepted, so that the mere mailing and filing of such application can never be deemed an acceptance. Something more is necessary to be shown, either an actual acceptance, or such circumstances as may imply acceptance, or estoppel from denying acceptance. In justice to the Circuit Judge, we state his language in this connection:

"The mere receiving through the mail and filing in the office may or may not be the acceptance of the application, but if the application was so received and marked received, and the company also received the premium and did not decline to issue the policy, but merely, without communicating with or requiring anything further from the plaintiff herself, merely delayed the delivery, making out and delivery of the policy for the purpose of procuring from its

agent some performance of his duties or the furnishing of some information on his part, which was not binding on or not the duty of the applicant to furnish, that would not be sufficient to warrant you in finding that the application was not accepted. But these matters are all matters of fact for you to determine from the testimony in the case, whether the application for this policy of insurance was accepetd or not, so as to constitute a contract of insurance. Unless the application was so accepted, then there was no contract of insurance."

While it is true the jury were instructed explicitly that there could be no contract of insurance until acceptance of the application at the home office and that this was a matter of fact for their determination, still under the charge the jury might well have concluded that there was an acceptance from the mere fact of mailing and filing the application. The testimony tended to show that on February 20, 1904, an application was sent in, signed by the son of the plaintiff, which was returned for the signature of the plaintiff, the owner of the property, and for some other information, that a new application was made out and signed by plaintiff and forwarded to the company's office at Spartanburg. The application was marked "Received February 29th, 1904," but was also returned for further information, especially with reference to names of adjoining property owners. The president of the company testified that they desired to know who were adjoining owners, as the company would not place insurance for more than $2,000 in reach of one fire. This application was received by Smith on March 7th and the fire occurred next day, before the application had been returned to the company for final acceptance. The charge above quoted was made in view of this testimony, and, while the Court doubtless did not intend so to do, was clearly an instruction to the jury as to the sufficiency or weight of the evidence on the vital question whether there was an acceptance of the risk by the defendant.

As these conclusions must result in a new trial, we do not deem it important or essential to consider the remaining exceptions.

The judgment of the Circuit Court is reversed, and the case is remanded for a new trial.