609 S.E.2d 286

**Danny WHALEY, Respondent,**

v.

**CSX TRANSPORTATION, INC., Appellant.**

No. 25935.

Supreme Court of South Carolina.

Heard Oct. 6, 2004.
Decided Feb. 2, 2005.
Rehearing Denied March 10, 2005.

458

460

464

Ronald K. Wray, II, Daniel B. White, Andrea M. Hawkins, all of Gallivan White & Boyd, of Greenville; and Lee S. Bowers, of Bowers & Siren, of Estill, for appellant.

C. Arthur Rutter, III, of Rutter Mills, of Norfolk; John E. Parker and Randolph Murdaugh, IV, both of Peters Murdaugh Parker Eltzroth & Detrick, of Hampton, for respondent.

Marvin D. Infinger and Lydia Blessing Applegate, both of Haynsworth Sinkler Boyd, of Charleston; and Victor E. Schwartz, Leah Lorber, and Cary Silverman, all of Shook Hardy & Bacon, of Washington, D.C., for Amici Curiae The American Tort Reform Association and The South Carolina Chamber of Commerce.

Wendy J. Keefer, of Barnwell Whaley Patterson & Helms, of Charleston; Robert W. Buffington of Haynsworth Sinkler Boyd, of Columbia, for Amici Curiae Concerned Citizens for Responsible Government in Hampton County and South Carolina Defense Trial Attorneys Association.

Stephen G. Morrison and Jacob A. Sommer, both of Nelson Mullins Riley & Scarborough, of Columbia; and Hugh F. Young, Jr., of Products Liability Advisory Council, Inc., of Reston, for Amicus Curiae Product Liability Advisory Council, Inc.

Chief Justice TOAL:

Danny Whaley (Whaley), a locomotive engineer, filed a complaint against his former employer, CSX Transportation, Inc. (CSX), alleging that, due to CSX's negligence, he was injured as a result of exposure to excessive heat in a locomotive cab. The jury awarded Whaley actual damages in the amount of $1,000,000. CSX appealed, and after certifying this case for review pursuant to Rule 204(b), SCACR, we affirm in part, reverse in part, and remand.

## FACTUAL/PROCEDURAL BACKGROUND

On May 24, 2000, Whaley reported to work at CSX's Maxwell Yard in Greenwood, South Carolina, to operate a familiar route from Greenwood to Laurens and then back.[1] On the way to Laurens, Whaley became disoriented and began experiencing stomach cramps, nausea, and diarrhea. He also noticed that he was not sweating, even though it was very hot in the locomotive cab. When he arrived in Laurens, Whaley went inside the depot office to cool off in the air conditioning. He tried drinking water but stopped because it made his stomach cramp.

Before Whaley began the return trip to Greenwood, he realized that because of his symptoms, he would not be able to make the trip. He returned to the depot and called 911.

---

1. The route was thirty miles each way, and with time spent switching cars and waiting, it took approximately twelve hours to complete a round trip.

EMS arrived, and after learning that Whaley had not been drinking fluids and was experiencing dizziness, the paramedic administered fluids through an IV. The paramedic then recommended that Whaley be taken to the emergency room "to be checked out." Upon arrival at the emergency room, Whaley's temperature was either 99.1 or 99.7 degrees.[2] The emergency room physician determined that Whaley suffered heat exhaustion, dehydration, and acute abdominal pain. Whaley was kept in the emergency room for approximately two hours for observation and then was released.

After that day, May 24, 2000, Whaley remained out of work for two weeks. On June 7, with his family doctor's permission, Whaley returned to work. Whaley testified that he still felt bad at the time, but he had to work or he would not get paid.

He worked June 7 and 8, and then took the next three days off because he was still not feeling well. The following Monday, June 12, Whaley returned to work, but the very next day, June 13, would be his last day working for CSX. He testified that, even though he did not feel well all day, he was able to complete his duties.

On June 14, 2000, Whaley went to a previously scheduled appointment with his family doctor, Dr. Hatfield, who told Whaley not to go back to work until doctors could determine why Whaley felt so badly and why he was unable to sweat upon exertion. Dr. Hatfield referred Whaley to a number of specialists. Dr. James, a cardiologist, testified that he found no cardiac abnormalities and thought, instead, that Whaley had a viral illness and, accordingly, referred him to an infectious disease specialist. Dr. Holman, an internal medicine specialist, testified that Whaley's symptoms were consistent with a viral illness, heat exhaustion, or dehydration.[3]

---

**2.** The temperature on the emergency room record appears as 99.1, but the emergency room doctor testified that Whaley had a temperature of 99.7.

**3.** Whaley also saw Dr. Rodillo, who administered a stress test. The results of this test are not part of the record. In addition, Whaley mentioned the name of a fourth specialist, Dr. Smith, whom he saw shortly after his alleged injury, but the record does provide the details of this treatment.

After he was examined by the specialists, Whaley testified that he concluded "[t]here was nothing anybody could do." Because of his inability to perspire upon exertion, Whaley never returned to work. Since then, he has been limited in his physical activity, but has still been able to enjoy hobbies such as fishing and hunting. In January 2003, however, Whaley began experiencing dizziness and shortness of breath. As a result, doctors installed a pacemaker.

Whaley filed a complaint against CSX in Hampton County on February 14, 2001, asserting claims under the Federal Employer's Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, and the Locomotive Inspection Act (LIA), 49 U.S.C. § 20701 *et seq.*, and alleging, in sum, that CSX was negligent for failing to provide him with a safe place to work. On November 1, 2002, CSX filed a motion to transfer venue to Greenwood County, which was denied. The case proceeded to trial in Hampton County, and the jury returned a verdict for Whaley in the amount of $1,000,000. CSX's post-trial motions were denied.

On appeal, CSX raises the following issues for review:

I. Did the trial court err in denying CSX's motion to transfer venue?

II. Did the trial court err in denying CSX's motion for JNOV?

III. Were Whaley's claims preempted by federal law?

IV. Did the trial court err in allowing medical experts to testify on Whaley's behalf about causation?

V. Did the trial court err in admitting evidence concerning injuries to other CSX employees, other employee complaints, and equipment on other CSX locomotives?

### LAW/ANALYSIS

#### I. VENUE

##### A. RESIDENCY

CSX argues that venue was improper in Hampton County because CSX does not "reside" in Hampton County. We agree.

Venue is the place or geographical location of trial. *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 238, 442 S.E.2d 598, 600 (1994); *see also In re Asbestosis Cases*, 276 S.C. 579, 581, 281 S.E.2d 112, 115 (1981) (noting that "venue" refers to the county where the action should be brought). The venue statute in South Carolina provides, in part, that an action "shall be tried in the county in which the defendant resides at the time of the commencement of the action." S.C.Code Ann. § 15–7–30 (1976). A defendant's right to be tried in the county of its residence is a substantial right. *Blizzard v. Miller*, 306 S.C. 373, 375, 412 S.E.2d 406, 406 (1991).

The question of where a defendant resides is a question of law. *Breland v. Love Chevrolet Olds, Inc.*, 339 S.C. 89, 92, 529 S.E.2d 11, 13 (2000). When the facts concerning a defendant's residence are uncontradicted, the trial court must, as a matter of law, change venue to the county where the defendant resides. *Blizzard*, 306 S.C. at 375, 412 S.E.2d at 406–07.

Early decisions by this Court established that, for purposes of venue, a foreign corporation resides in any county where it has an office and agent for the transaction of business. *Sanders v. Allis Chalmers Mfg. Co.*, 235 S.C. 259, 111 S.E.2d 201 (1959); *Hancock v. S. Cotton Oil Co.*, 211 S.C. 432, 45 S.E.2d 850 (1947); *Coker v. Sinclair Refining Co.*, 203 S.C. 13, 25 S.E.2d 894 (1943); *Shelton v. S. Kraft Corp.*, 195 S.C. 81, 10 S.E.2d 341 (1940); *Tucker v. Ingram*, 187 S.C. 525, 198 S.E. 25 (1938); *Campbell v. Mut. Benefit Health & Accident Ass'n*, 161 S.C. 49, 159 S.E. 490 (1931); *see also Hayes v. Seaboard Air Line Ry.*, 98 S.C. 6, 81 S.E. 1102 (1914) (holding that a foreign railroad corporation resides in the county where it "owns a line of railway" and "maintains offices and agents . . . for the transaction of its business"). Domestic corporations, on the other hand, have been held to reside (1) in any county where the corporation maintains an agent and transacts its corporate business *or* (2) in the county where the corporation maintains its principal place of business. *See McGrath v. Piedmont Mut. Ins. Co.*, 74 S.C. 69, 72, 54 S.E. 218, 218–19 (1906); *Tobin v. Chester & L. Narrow–Gauge R.R. Co.*, 47 S.C. 387, 25 S.E. 283 (1896) (holding that a domestic railroad corporation resides in the county "where its line is located,

and where it maintains a public office for the transaction of its business, and an agent upon whom process may be served").

In 1941, however, this Court expanded the definition of venue for *domestic* corporations. In *Miller v. Boyle Constr. Co.*, this Court held that venue is proper in any county where a domestic corporation "owns property and transacts business." 198 S.C. 166, 172, 17 S.E.2d 312, 314–15 (1941). In support of its decision, the Court relied upon language in a 1927 statute concerning service of process on and jurisdiction over domestic corporations:

in the case of *domestic* corporations[,] service ... shall be effective and confer jurisdiction over any domestic corporation in any county where such domestic corporation shall *own property and transact business* regardless of whether or not such domestic corporation maintains an office or has agents in that county.

*Id.* at 172, 17 S.E.2d at 315 (emphases added). Although the statute pertained to service and jurisdiction—not venue—the Court decided that the statute "governed and controlled" the question of where a domestic corporation resides for purposes of venue. *Id.* As a result, counties where a domestic corporation owned property and transacted business became an additional place where venue could be found proper.

Six years later, the Court had the opportunity to extend the "owns property and transacts business" test to *foreign* corporations, but the Court declined to do so. *See Hancock v. Southern Cotton Oil Co.*, 211 S.C. 432, 437, 45 S.E.2d 850, 853 (1947) (holding that foreign corporations reside in any county where they maintain an agent and office for the transaction of business). In *Hancock*, the Court squarely considered whether the rule established in *Miller*—that *domestic* corporations reside in any county where they own property and transact business—applied to *foreign* corporations, and the Court held that it did not. The Court declined to extend the rule to foreign corporations because the 1927 service statute, which formed the basis of the Court's decision in *Miller*, dealt only with domestic corporations, not foreign corporations. If the legislature had intended for the statute to apply to foreign corporations, the Court reasoned, then the statute would have been written accordingly. The Court was unwilling, therefore,

to use the statute to define venue as proper in any county where a foreign corporation owned property and transacted business. Consequently, the Court maintained the long-standing rule that a foreign corporation resides in any county where the corporation maintains an agent and office for the transaction of business. *Id.* at 438, 45 S.E.2d at 854.

Eventually, in 1964, the statute concerning service and jurisdiction was amended to include foreign corporations. The amended statute provided, in part, the following:

> in the case of *domestic or foreign corporations,* service as effected under the terms of this section shall be effective and confer jurisdiction over any domestic or foreign corporation in any county *where such domestic or foreign corporation shall own property and transact business, regardless of whether or not such domestic or foreign corporation maintains an office or has agents in that county.*

S.C.Code Ann. § 10–421 (Supp.1975)[4] (emphases added). Now that the service statute included both domestic and foreign corporations, the question then became whether the Court would use the statute to expand the definition of venue for foreign corporations, to include any county where a foreign corporation owned property and transacted business.

Soon after the service statute was amended, the Court answered this question, holding that venue was proper in a county where a *foreign* corporation owned property and transacted business. *Lott v. Claussens, Inc.,* 251 S.C. 478, 480, 163 S.E.2d 615, 616–17 (1968). The Court reached this decision by relying exclusively on the 1964 service statute, without a single citation to the venue statute or precedent.

Finally, in 1980, this Court definitively established that, for a corporate defendant, venue is proper in any county where such corporate defendant—foreign or domestic—owns property and transacts business, regardless of whether the corporation maintains an office and agent in that county. *In re Asbestosis Cases,* 274 S.C. 421, 433, 266 S.E.2d 773, 778 (1980). In that case, the Court began its analysis with the proposition that venue for corporations may be predicated on *either* the venue statute, S.C.Code Ann. § 15–7–30 (1976), *or* the service

---

4. This statute was subsequently codified at S.C.Code Ann. § 15–9–210 (1976).

of process statute, S.C.Code Ann. § 15–9–210 (1976). Because the Court reasoned that both statutes addressed the venue issue, the Court read the two statutes together.

The venue statute, S.C.Code Ann. § 15–7–30, entitled "Actions which must be tried in county where defendant resides," provided, in part, the following:

[an] action shall be tried in the county in which the defendant resides at the time of the commencement of the action. If there be more than one defendant then the action may be tried in any county in which one or more of the defendants to such actions resides at the time of the commencement of the action. If none of the parties shall reside in the State the action may be tried in any county which the plaintiff shall designate in his complaint. This section is subject however to the power of the court to change the place of trial in certain cases as provided by law.

The service of process statute, S.C.Code Ann. § 15–9–210, entitled, "Service on corporations generally," provided, in part, the following:

service as effected under the terms of this section shall be effective and *confer jurisdiction* over any domestic or foreign corporation in any county where such domestic or foreign corporation shall *own property and transact business,* regardless of whether or not such domestic or foreign corporation maintains an office or has agents in that county.

(Emphases added).

Because the venue statute did not define the term "resides," the Court, as it had done in prior decisions, looked to the service statute for guidance. The Court explained its analysis in the following way:

[b]oth 15–7–30 and 15–9–210 obviously deal with the same general subject matter.[5] With [this] principle in mind, it is logical to interpret "resides" as used in section 15–7–30 to

5. Throughout the opinion, the Court intertwined the concepts of service, jurisdiction, and venue. For example, the Court viewed the 1964 amendment to the *service* statute—which provided that service on a domestic or foreign corporation was proper and conferred jurisdiction in any county where the corporation owned property and transacted business—as an amendment that expanded the law of *venue. Id.* at 426, 266 S.E.2d at 775.

include, for the purpose of determining proper venue, those counties in which any corporate defendant "shall own property and transact business" as provided in section 15–9–210.

*In re Asbestosis Cases,* 274 S.C. at 426, 266 S.E.2d at 775. Accordingly, without relying on precedent, the Court held that because the defendant corporation did not own property or transact business in Barnwell County, venue was not proper in that county, and the case was remanded for transfer to Greenville County, where the defendant had its only place of business. *Id.* at 433, 266 S.E.2d at 778.

A year later, the Court delineated the three locations where a corporation's residence may be established for purposes of venue:

(1) county where a domestic corporation has its principal place of business, *Lucas v. Atlantic Greyhound Federal Credit Union*[, 268 S.C. 30, 231 S.E.2d 302] ...; or

(2) county where a domestic or foreign corporation maintains an office and agent for the transaction of business, *Lucas v. Atlantic Greyhound Federal Credit Union* ...; *Shelton v. Southern Kraft Corp.,* 195 S.C. 81, 10 S.E.2d 341 (1940); or

(3) county where a domestic or foreign corporation owns property or transacts business (§ 15–9–210), Code of Laws of South Carolina (1976).

*In re Asbestosis Cases,* 276 S.C. 579, 582, 281 S.E.2d 112, 114 (1981). Notably, the Court cited case law in support of the "office and agent" test and statutory law in support of the "owns property and transacts business" test. *Id.*

Soon after the Court published the *In re Asbestosis Cases* decisions, the legislature rewrote section 15–9–210, the service statute. The revised service statute no longer included the phrase "own property and transact business" and no longer referred to jurisdiction. *See* S.C.Code Ann. § 15–9–210 (Supp.1981). Moreover, the revised service statute dealt only with domestic corporations; provisions regarding service on foreign corporations were moved to another section of the Code. *See* § 15–9–240 (Supp.1981). As a result of these significant revisions, there is no longer a statutory basis for laying venue in a county where a corporation "owns property and transacts business."

Although the statutory basis for the "owns property and transacts business" test no longer exists, South Carolina appellate courts have continued to cite the test. *See Dove v. Gold Kist, Inc.,* 314 S.C. at 239, 442 S.E.2d at 600–01; *McKissick v. J.F. Cleckley & Co.,* 325 S.C. 327, 335, 479 S.E.2d 67, 70 (Ct.App.1996). Only one case, however, has actually applied the test to reach its holding. *See Thomas & Howard Co., Inc. v. Wetterau, Inc.,* 291 S.C. 237, 239, 353 S.E.2d 141, 142 (1987) (holding that a corporation resides in county where it owns property and transacts business).

In the present case, the trial court [6] relied upon this Court's decisions in *Thomas & Howard* and the two *In re Asbestosis Cases* to support his decision to deny CSX's motion to change venue, finding that CSX was a resident of Hampton County because it owned property and transacted business in Hampton County. In so ruling, the trial court also relied, in part, on dicta from this Court's most recent case concerning venue, *Breland v. Love Chevrolet,* 339 S.C. at 94, 529 S.E.2d at 13. In *Breland,* this Court held that a denial of a motion to change venue was not immediately appealable. *Id.* at 96, 529 S.E.2d at 14. In dicta, however, the Court stated, "it is clear that [the defendant's] *substantial and continuous contacts* with Hampton County will sustain the trials court's decision [to deny the motion to change venue]." *Id.* at 94, 529 S.E.2d at 13 (emphasis added). Relying on this language, the trial court in the present case found that the Supreme Court "clearly indicated that the foreign corporation's *substantial and continuous contacts* with a particular county support[ed] venue." (Emphasis added).

 We hold that the trial court erred in finding that CSX resides in Hampton County. First, we find that the trial court improperly relied upon dicta in *Breland.* As the trial judge in the present case acknowledged, the merits of the defendant's

---

6. Pre-trial rulings in this case on the venue issue were made by Circuit Court Judge J. Cordell Maddox, Jr. The case was tried to a jury before Circuit Court Judge Perry M. Buckner, who made the evidentiary rulings and post-verdict rulings. We have referred to these judges collectively as "the trial court" or "the trial judge." Judge Maddox and Judge Buckner are skilled and experienced trial judges who did not have the benefit of our rulings here when they conscientiously applied precedent as it then existed.

motion to change venue was not before this Court. Moreover, we did not hold that "substantial and continuous contacts" in a particular county satisfies the "owns property and transacts business" test. Therefore, the dicta in *Breland* does not support the trial court's ruling.

Second, we hold that the "owns property and transacts business" test is no longer a viable test for determining whether venue is proper. To begin, the test was improperly created by the Court reading two statutes, in tandem, that addressed separate and distinct concepts. *See In re Asbestosis Cases,* 274 S.C. at 426, 266 S.E.2d at 775. Section 15–9–210 addressed service of process and jurisdiction, while section 15–7–30 addressed—and still does today—venue. Venue is the place or geographical location of trial. *Dove,* 314 S.C. at 238, 442 S.E.2d at 600; *see also In re Asbestosis Cases,* 276 S.C. at 581, 281 S.E.2d at 114. Jurisdiction, on the other hand, is the power of a court to decide a case. *Black's Law Dictionary* 855 (7th ed. 1999); *see also Dove,* 314 S.C. at 237–38, 442 S.E.2d at 600 (defining subject matter jurisdiction as the court's power to hear and determine a particular class of cases). Proper service of process on a defendant, therefore, confers personal jurisdiction over the defendant. *Moore v. Simpson,* 322 S.C. 518, 523, 473 S.E.2d 64, 66 (Ct.App.1996). Consequently, a court may have personal jurisdiction over a properly served defendant by effecting personal service in a particular geographical location without venue being proper in the place of service. Therefore, because these statutes do not address the same concepts, the Court improperly used the language from the service statute to define the term "resides" in the venue statute.

Even if we were to find that the Court properly used the "owns property and transacts business" language from the service statute to define "resides," we no longer support a test that, derived from statute, no longer exists in that statute. Again, when rewriting section 15–9–210, the legislature removed the "owns property and transacts business" language. As a result, this Court can no longer point to a statute, as it did in prior decisions, including the two *In re Asbestosis Cases* decisions and the earlier decision in *Lott v. Claussens, Inc.,* to find venue proper in a county where a corporate defendant owns property and transacts business. Therefore, in our

decision today, we are unwilling to uphold the "owns property and transacts business" test.

Finally, as recently as 1994, this Court has continued to recognize that venue is proper where a corporate defendant maintains an office and agent for the transaction of business. *Dove*, 314 S.C. at 238, 442 S.E.2d at 600; *Stewart v. Nichols*, 282 S.C. 402, 404, 318 S.E.2d 369, 370 (1984). In *Dove*, we were unwilling to find that venue was proper in Richland County on the sole basis that the defendant corporation maintained a retail outlet in the county. *Dove*, 314 S.C. at 239, 442 S.E.2d at 601. Instead, the Court was concerned with whether the defendant maintained an *agent* in Richland County, and, therefore, remanded the case to the trial court to make such a determination. *Id.*

■ Accordingly, we hold that for purposes of venue, a defendant corporation resides in any county where it (1) maintains its principal place of business or (2) maintains an office and agent for the transaction of business.

CSX is incorporated under Virginia law, and its principal place of business is in Florida. Although CSX owns property and transacts business in Hampton County, it does not maintain an office and agent for the transaction of business there. Therefore, the trial court erred in finding that venue was proper in Hampton County.

## B. CONVENIENCE AND JUSTICE

CSX argues that even if it did reside in Hampton County, its motion to change venue should have been granted based on the convenience of witnesses and the ends of justice.[7] We agree.

---

7. Although we hold that venue was improper in Hampton County because CSX did not "reside" there, we address the alternative basis upon which venue was improper—the convenience of witnesses and the ends of justice—because we seek to issue a comprehensive decision that clarifies the law of venue. Moreover, because the incidents and parties involved in the underlying lawsuit had no rational connection to the county in which this case was tried, we cannot ignore a trial court ruling that fails to base venue on principles of convenience and justice, particularly when such rulings may undermine the public's confidence in our judicial system.

## 1. Discretionary authority

A trial judge may change the place of trial "[w]hen the convenience of witnesses and the ends of justice would be promoted by the change." S.C.Code Ann. § 15–7–100(3) (1976). Unlike the determination of residency, which is a question of law, it is within the trial judge's discretion to determine whether to grant a motion to change venue based on the convenience of the witnesses and the ends of justice. *Varnadoe v. Hicks*, 264 S.C. 216, 219, 213 S.E.2d 736, 737 (1975).

In the present case, the trial judge found that he lacked the discretionary authority to transfer the case based on subsection 2 of South Carolina's long-arm statute.[8] Subsection 2 provides that when jurisdiction is based solely on the long-arm statute, a trial judge is not permitted to transfer venue for the convenience of witnesses and the ends of justice.[9] S.C.Code Ann. § 36–2–803(2) (1976). Because the trial judge found that personal jurisdiction in this case was based solely on the long-arm statute, he found that he was without authority to transfer the case. We disagree.

The trial court's jurisdiction was not based solely on the long-arm statute's bare threshold level of minimum contacts. Another statutory basis for jurisdiction existed under S.C.Code Ann. § 36–2–802 (1976), which provides that "[a] court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, *doing business,* or maintaining his or her principal place of business in, this State as to any cause of action." (Emphasis added). Evidence in

---

8. The long-arm statute confers personal jurisdiction over a nonresident defendant for specific conduct occurring in this state. S.C.Code § 36–2–803(1) (1976).

9. We note that South Carolina is the only state that prohibits nonresident defendants—defendants who are brought into a South Carolina court solely on the basis of the long-arm statute—from transferring venue for the convenience of witnesses and the ends of justice. *See* Timothy Clardy, *Nonresident Defendants Don't Deserve Convenience or Justice in South Carolina,* 55 S.C. L. Rev. 443 (2004) (arguing that section 2 of the long-arm statute violates the Equal Protection Clause and the Privileges and Immunities Clause of Article IV, Section 2 of the United States Constitution). We do not, however, consider the constitutionality of subsection 2 of the long-arm statute.

the record demonstrates that CSX conducts business in this state, owns property in this state, and has an agent for service of process in this state.[10]

Because we find that CSX was "doing business" in this state, we hold that the trial court erred in ruling that jurisdiction was based solely on the long-arm statute. Consequently, the trial judge erred in ruling that he did not have the discretionary authority to transfer the case based on the convenience of the witnesses and the ends of justice.

## 2. Merits

■ Even though the trial judge found that he did not have the authority to transfer the case based on convenience of the witnesses and the ends of justice, the judge addressed the merits of the motion, found that CSX did not make a *prima facie* showing that the witnesses would be inconvenienced by a trial in Hampton County, and, accordingly, ruled that CSX's motion, if considered on the merits, would be denied.

■ Either party may make a motion to change venue based on convenience of the witnesses and the ends of justice. *McKissick v. J.F. Cleckley & Co.*, 325 S.C. 327, 334, 479 S.E.2d 67, 70 (Ct.App.1996). The moving party has the burden of making a *prima facie* showing that both the convenience of the witnesses and the ends of justice would be promoted. *Mixson v. Agricultural Helicopters, Inc.*, 260 S.C. 532, 197 S.E.2d 663 (1973). The showing must be based on "competent evidence," not mere "beliefs, opinions, and conclusions of the witnesses." *Id.* Once such a showing has been made, the burden shifts to the party opposing the motion to overcome at least one of the two requirements. *Id.*

At the motion hearing, CSX presented evidence showing that almost every witness identified by each of the parties lived either in Greenwood County or the contiguous counties of Laurens and Abbeville.[11] With the exception of a medical

---

10. In fact, in its amended answer to the complaint, CSX admitted that it "does business in South Carolina."

11. This evidence was presented in the form of answers to interrogatories.

expert retained by Whaley to review his condition in preparation for trial, none of the witnesses were residents of Hampton County.[12] In addition, the alleged injuries occurred either in Greenwood or Laurens Counties, not Hampton County. Finally, CSX submitted deposition excerpts from two of Whaley's treating physicians who testified that it would be inconvenient for them to travel from Greenwood to Hampton County for trial.[13]

Based on this evidence, we find that CSX made a *prima facie* showing that Hampton County was not a convenient place for trial. Moreover, we hold that the ends of justice were not promoted by having this case tried in Hampton County. *See Varnadoe v. Hicks*, 264 S.C. 216, 213 S.E.2d 736 (1975) (convenience of the witnesses is a factor the court may consider in deciding whether a change of venue would promote the ends of justice); *Holden v. Beach*, 228 S.C. 234, 89 S.E.2d 433 (1955) (the ends of justice are promoted by having a jury from the same area as the witnesses evaluate witness credibility).

Therefore, we hold that the trial judge erred in ruling that CSX failed to make a *prima facie* showing that the convenience of witnesses and the ends of justice would be promoted by a change of venue.

## II. JNOV

CSX argues that Whaley did not present a sufficient amount of evidence from which a reasonable and fair-minded juror could have found that CSX violated the Federal Employer's Liability Act (FELA) or the Locomotive Inspection Act (LIA). Accordingly, CSX argues, the trial court erred in denying CSX's motion for JNOV on these two claims. We agree that

---

**12.** In fact, at trial, Whaley presented the testimony of eleven witnesses by video deposition, instead of by live testimony, in Hampton County.

**13.** At oral argument before this Court, Whaley's counsel was asked the following question: "Why was this suit brought in Hampton County?" Counsel answered, "It was brought there because we're the lawyers." Later, counsel modified his answer, stating that the suit was brought in Hampton County because "we're the lawyer and they [CSX] are residents there." In either case, the location of a lawyer's office should not enter into the analysis of whether a defendant resides in a particular county for purposes of venue.

the trial court erred in denying the motion on the LIA claim, but we disagree that the court erred in denying the motion on the FELA claim.

## A. FELA claim

When deciding whether to grant a motion for JNOV in a FELA action, a state court must apply the federal standard. *Rogers v. Norfolk S. Corp.*, 356 S.C. 85, 91, 588 S.E.2d 87, 90 (2003). The federal standard for sufficiency of evidence, which applies to both trial and appellate courts, is the following:

> the evidence and all reasonable inferences from it are assessed in the light most favorable to the non-moving party ... and the credibility of all evidence favoring the non-moving party is assumed.... Assessed in this way, the evidence must then be "of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment could reasonably return a verdict for the non-moving party...." A "mere scintilla of evidence" is not sufficient to withstand the challenge.

*Id.* at 91–92, 588 S.E.2d at 90 (internal citations omitted). Therefore, the non-moving party must present "more than a scintilla of evidence to establish his claim." *Id.* at 92, 588 S.E.2d at 90.

Under FELA, railroad carriers are liable to their employees for injury resulting, in whole or in part, from the employer's negligence. 45 U.S.C. § 51 (2000). Moreover, a railroad has a non-delegable duty to provide its employees with a safe place to work.[14] *Rogers,* 356 S.C. at 92, 588 S.E.2d at 90 (citations omitted). This duty, however, extends only to foreseeable dangers. *Id.* To recover, a plaintiff must prove the common law elements of negligence: duty, breach, causation, and damages. *Id.* at 91, 588 S.E.2d at 90.

Viewing the evidence and its inferences in the light most favorable to Whaley, we find that Whaley presented more than a scintilla of evidence to support a verdict in his favor on the FELA claim. At trial, Whaley presented the testimony of

---

14. We note that FELA does not impose a duty on railroads to provide employees with air-conditioned locomotives. *Norfolk Southern Ry. Co. v. Denson,* 774 So.2d 549, 556 (Ala.2000).

Tony Smith, general chairman for the Eastern Lines General Committee of Adjustment on CSX, who admitted that locomotive cabs become very hot during the summer months. In addition, Larry Koster, chief mechanical officer for CSX, testified that CSX was aware that extreme heat and airflow were issues in locomotives. Finally, Gregory Martin, chief mechanical officer for engineering and quality assurance for CSX, testified that CSX had studied the issue of excessive heat in locomotive cabs.

Based on this testimony, we find that Whaley presented more than a scintilla of evidence to establish that CSX knew or, in the exercise of ordinary care, should have known that the conditions inside its locomotives could constitute an unsafe work environment. Therefore, we hold that Whaley presented enough evidence from which a fair-minded juror could differ on whether CSX was negligent and whether that negligence contributed to Whaley's injury.

### B. LIA claim

We find, however, that the trial court erred in denying the JNOV motion on the LIA claim. Under the LIA, railroad carriers must ensure that their locomotives and all parts and appurtenances "are in proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701 (2000). In addition, LIA regulations require that locomotives "be provided with proper ventilation." 49 C.F.R. 229.119(d) (2003). But "a carrier cannot be held liable under the [LIA] for failure to install equipment on a locomotive unless the omitted equipment (1) is required by applicable federal regulations; or (2) constitutes an integral or essential part of a completed locomotive." *Mosco v. Baltimore & Ohio R.R.*, 817 F.2d 1088, 1091 (4th Cir.1987).

In this case, Whaley argues that the locomotives he operated lacked proper ventilation. But he did not present any evidence that the locomotives and their parts were not in proper condition. Moreover, he did not present any evidence that CSX failed to install equipment that was required under federal regulations or that constituted an integral or essential part of the locomotive. Because Whaley did not present even a scintilla of evidence to establish a claim under the LIA, we

hold that a fair, impartial, and reasonable juror could not have returned a verdict in Whaley's favor on the LIA claim.

Consequently, we hold that the trial court erred in denying CSX's motion for JNOV on the LIA claim but properly denied the motion on the FELA claim.

## III. PREEMPTION

CSX argues that the FELA and LIA claims are precluded and preempted under federal law.[15] We agree that the LIA claim is preempted but hold that the FELA claim is not.

The United States Supreme Court has held that the LIA's predecessor, the Boiler Inspection Act, was intended to "occupy the field" of locomotive regulation. *Napier v. Atl. Coast Line R. Co.*, 272 U.S. 605, 613, 47 S.Ct. 207, 71 L.Ed. 432 (1926). As a result, any state regulation of locomotives, e.g., to promote health and comfort or safety, is precluded and preempted by federal law. *Id.* at 612–13, 47 S.Ct. 207; *see also General Motors Corp. v. Kilgore*, 853 So.2d 171 (Ala.2002) (holding that the LIA preempts state common law claims brought in wrongful death action).

In the present case, we hold that Whaley's claim under the LIA is preempted by federal law. Federal law does not require that CSX install fans or air conditioners in its locomotives. To uphold the jury's verdict would support a finding of liability despite CSX's compliance with all applicable statutes and regulations and would force CSX to alter its locomotives in a way that would conflict with the uniformity and consistency that the LIA is designed to provide. As a result, CSX would be forced to install cooling devices on all locomotives to protect itself against future lawsuits in South Carolina. Therefore, we hold that Whaley's claim under the LIA is preempted.

But Whaley's negligence claim—that his employer did not provide a safe place to work—is not preempted by federal

---

**15.** CSX raised this argument several times throughout the trial, and the trial judge ruled that the argument failed as a matter of law. Because CSX will likely raise this preemption argument on remand, we address the merits of this argument in the interest of judicial economy.

law. A claim under FELA gives rise to an ordinary negligence action, which is governed by state law. Therefore, to the extent Whaley had a viable claim, he could have brought it under the FELA only.

## IV. Expert Testimony

CSX argues that the trial court erred in allowing Whaley to present expert testimony that heat exposure caused Whaley's current inability to sweat. Moreover, CSX argues that the evidence did not meet the standard for admissibility, was unreliable, lacked proper foundation, and was based on facts not in evidence.

After reviewing the record, we find that this issue is not preserved for review. *See Holy Loch Distributors, Inc. v. Hitchcock,* 340 S.C. 20, 24, 531 S.E.2d 282, 284 (2000) (to preserve an issue for appellate review, the issue must have been raised to and ruled upon by the trial court).

CSX argues that the trial court erred in allowing Drs. Shealy, Waheed, and Collins to testify as to causation. But there is no evidence in the record that CSX objected, at all, to the testimony of Drs. Shealy and Waheed during trial. CSX did, however, object to Dr. Collins's testimony, on the basis that it did not meet the standard of reliability. But this objection was apparently raised and ruled upon in a side bar, and the contents of the side bar are not part of the record.[16] Moreover, when counsel attempted to put the contents of the side bar on the record, the trial judge interrupted to explain that the objection had been overruled in the side bar, not because the judge thought the testimony met the standard of reliability, but because counsel failed to lay a foundation for the objection. Therefore, the trial court did not rule upon the issue now raised by CSX in this appeal. For these reasons, we find that this issue is not preserved for review.

## V. Other Evidence

CSX argues that the trial court erred in admitting evidence of other employee complaints about the temperature

---

**16.** The record does contain the contents of a side bar in which CSX objected to Dr. Collins's testimony based on hearsay, not based on the grounds raised in this appeal.

in locomotives. CSX also argues that the trial court erred in admitting evidence about fans, air conditioners, and white-painted roofs on other locomotives. We agree.

Evidence of similar accidents, transactions, or happenings is admissible in South Carolina where there is some special relation between them tending to prove or disprove some fact in dispute. *Brewer v. Morris*, 269 S.C. 607, 610, 239 S.E.2d 318, 319 (1977). This rule, which governs the admissibility of prior accidents, transactions, or happenings, is based on "relevancy, logic, and common sense." *Id.* Because evidence of other accidents may be highly prejudicial, "[a] plaintiff must present a factual foundation for the court to determine that the other accidents were substantially similar to the accident at issue." *Buckman v. Bombardier Corp.*, 893 F.Supp. 547, 552 (E.D.N.C.1995).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, SCRE. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, SCRE. The admission of evidence is within the trial judge's discretion and his decision will not be reversed absent an abuse of discretion. *State v. Gaster*, 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002).

In the present case, the trial judge permitted Whaley to submit evidence that, between 1984 and 2000, CSX had received ninety-seven employee complaints about heat. In addition, the trial judge permitted Whaley to introduce evidence that, between 1993 and 2000, eighteen CSX employees had suffered heat stroke. Finally, the judge allowed Whaley to introduce letters written to CSX by union officials complaining about heat.

We hold that this evidence should not have been admitted. Whaley did not establish that the reported complaints and injuries stemmed from the same or similar circumstances as his injuries. Because Whaley did not establish that the other employees were injured under similar circumstances, much

less under substantially similar circumstances, the trial judge erred in admitting the evidence.

 The trial judge also allowed Whaley to introduce evidence that some CSX locomotive cabs are equipped with fans or air conditioners, and that the tops of some cabs are painted white. We find that this evidence was not relevant to Whaley's claim that the locomotives in which he was injured were unsafe to operate or were not properly ventilated. Moreover, based on our holding that the LIA claim is preempted, the evidence should not have been admitted to show that CSX was liable for failing to install particular cooling devices.

Therefore, we hold that the trial judge erred in allowing Whaley to introduce this evidence.

### CONCLUSION

In sum, we reverse the trial court's ruling denying CSX's motion to change venue. CSX does not reside in Hampton County for purposes of venue, and therefore the case should not have been tried in Hampton County. Moreover, the case should have been transferred to Greenwood County on the basis of the convenience of witnesses and the ends of justice.

In addition, we reverse the trial court's ruling denying CSX's motion for JNOV on the LIA claim. But we affirm the trial court ruling denying CSX's motion for JNOV on the FELA claim. As a result, Whaley may proceed with the FELA claim upon re-trial.

Finally, we reverse the trial court's ruling admitting certain evidence regarding other employee complaints and regarding fans, air conditioners, and white-painted roofs on other locomotives.

This case is therefore remanded to Greenwood County to be tried in accordance with this opinion.[17]

---

17. The concurrence makes the technical procedural point that the case should be remanded to Hampton County, instead of Greenwood County, without prejudice to CSX's right to renew its motion to change venue. First, in remanding this case, we direct the remittitur to be sent to the trial court in Hampton County, where, by order of this Court, the case will be transferred to Greenwood County. Second, in light of

MOORE, WALLER and BURNETT, JJ., concur.

PLEICONES, J., concurring in a separate opinion.

Justice PLEICONES concurring.

I agree with the majority that the trial court erred in denying CSX's motion for a change of venue pursuant to S.C.Code Ann. § 15–7–30 (1976). Having found this statute controls, I would not reach the other venue issues. I therefore join Part I A of the majority, but decline to join Part I B.

I also join the majority's decision in Part II affirming the trial court's denial of CSX's JNOV motion as it related to the FELA claim and reversing as to the LIA claim. Therefore, I find it unnecessary to reach CSX's curious preemption argument as to the LIA cause of action. Moreover, like the LIA claim, the FELA claim was brought pursuant to a federal act, and does not require us to decide whether these statutes preempt a state law claim. I therefore decline to join Part III. While I join the majority's disposition of the evidentiary issues in Parts IV and V, I do so with the understanding that some of these evidentiary objections may be renewed at the next trial.

For the reasons given above, I concur in the majority's decision to remand the FELA claim for a new trial.[18]

today's opinion, we do not think it is necessary for CSX to renew its motion to change venue, as suggested in the concurring opinion.

18. In my view, the case must be remanded to Hampton County, without prejudice to CSX's right to renew its motion to change venue. *See State v. Hunter*, 82 S.C. 153, 63 S.E. 685 (1909) (remittitur returned to county where appeal from venue order originated).