# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Martha M. Fountain and Curtis Fountain, Plaintiffs,

v.

Fred's, Inc. and Wildevco, LLC, Respondents,

v.

Tippins-Polk Construction, Inc. and Rhoad's Excavating Services, LLC, Third-Party Defendants,

Of whom Tippins-Polk Construction, Inc. is the Appellant.

Appellate Case No. 2017-000688

---

Appeal From Barnwell County
Doyet A. Early, III, Circuit Court Judge

---

Opinion No. 5714
Heard May 15, 2019 – Filed February 12, 2020

---

## AFFIRMED IN PART AND REVERSED IN PART

---

Morgan S. Templeton and John Joseph Dodds, IV, both of Wall Templeton & Haldrup, PA, of Charleston, for Appellant.

Regina Hollins Lewis and Lee Ellen Bagley, both of Gaffney Lewis, LLC, of Columbia, for Respondent Wildevco, LLC.

Matthew Clark LaFave, of Crowe LaFave, LLC, of Columbia, for Respondent Fred's, Inc..

---

**WILLIAMS, J.:** In this civil matter, Tippins-Polk Construction, Inc. (Tippins-Polk) appeals the circuit court's order entering judgment in favor of Fred's, Inc. (Fred's) and Wildevco, LLC (Wildevco) on Fred's and Wildevco's equitable indemnification claims asserted against Tippins-Polk. Fred's and Wildevco each brought equitable indemnification claims against Tippins-Polk for the cost of settling an underlying lawsuit brought against Fred's and Wildevco as a result of Tippins-Polk's alleged faulty construction of a Fred's store. On appeal, Tippins-Polk argues the circuit court erred in (1) finding a sufficient special relationship existed between Fred's and Tippins-Polk to support a claim for equitable indemnification; (2) finding Fred's and Wildevco were without fault in the underlying lawsuit; (3) awarding Fred's and Wildevco damages not requested in their pleadings; (4) awarding attorney's fees to Fred's and Wildevco for defending the underlying lawsuit and prosecuting the equitable indemnification action against Tippins-Polk; and (5) refusing to consider evidence of a similar incident at a Fred's store in another county. We affirm in part and reverse in part.

## FACTS/PROCEDURAL HISTORY

Fred's is a Tennessee corporation that operated a retail store in Williston, South Carolina. The Fred's store at issue in this case was located on property in Williston owned by a development company, Wildevco. Pursuant to a lease agreement, Wildevco agreed to construct a store for Fred's on the premises and lease the property to Fred's for a ten-year period beginning in 2005. Wildevco entered into a construction agreement with Tippins-Polk, a general contractor, to complete the Fred's project. Fred's opened the Williston store around October 2005.

On March 10, 2010, Martha Fountain tripped over the curb ramp outside the entrance to the Fred's store and fell, sustaining injuries to her head, wrist, and elbow. Martha's injuries required her to undergo several surgeries, including the implantation and removal of hardware in her wrist. Martha also missed work, and she was ultimately unable to return to her prior employment due to lifting restrictions implemented as a result of her injuries. In May 2010, Martha and her husband, Curtis Fountain (collectively, the Fountains), filed a lawsuit against Fred's and Wildevco in which Martha claimed over $90,000 in medical damages and lost wages. Curtis also filed a loss of consortium claim.

Wildevco and Fred's filed third-party claims against Tippins-Polk for equitable indemnification, negligence, breach of contract, and breach of warranty.[1] In March 2016, Wildevco and Fred's settled with the Fountains for $290,000. Wildevco paid $250,000, and Fred's paid $40,000. On June 6-7, 2016, the circuit court held a bench trial solely on Wildevco and Fred's equitable indemnification claims against Tippins-Polk.

Wildevco and Fred's presented testimony from the Fountains detailing Martha's fall and consequential injuries. Martha stated she endured four different surgeries as a result of her fall, and she testified to the employment limitations she suffered due to her injuries. Curtis Fountain testified about the effect Martha's injuries had on the family's home life and financial situation.

Horace Tilden Hilderbrand, Jr. testified Wildevco hired his engineering company to prepare the survey and site plans for the Fred's store construction project. When shown a photograph of the finished sidewalk at the Fred's store, Hilderbrand noted an elevation change and a recessed ramp that differed from what the design called for in the site plans.[2] He mentioned the approximate two-inch height of the curb was not a typical curb height.[3] Hilderbrand explained the site plans contained general notes about standard procedures or installation, and he stated the general contractor should have read the notes. He confirmed the sidewalk and curb shown in the picture of the Fred's store were not constructed in accordance with the site plans he prepared for the Fred's project.

Thaddeus Dill Barber testified he was the partner at Wildevco that managed the construction of the Fred's store project in Williston. Barber stated he hired the engineer, architect, and general contractor—Tippins-Polk—for the Fred's project. He explained the contract with Tippins-Polk dictated that Tippins-Polk would construct the Fred's store in accordance with building and site plans.

---

[1] Tippins-Polk also filed fourth-party claims against two of its subcontractors, Southern Asphalt and Rhoad's Excavating. Summary judgment was granted in favor of Southern Asphalt in July 2014. Rhoad's Excavating did not appear, and an order of default was entered against it in July 2013.

[2] Hilderbrand testified the site plans would have included a drawing of wings at the sidewalk if the plans had called for the construction of a handicap curb ramp.

[3] Hilderbrand stated curb heights are typically six inches.

The circuit court qualified Fred's and Wildevco's next witness, Joseph Stephen Hunt, as an expert in codes, regulations, and standards relative to building construction and in fall safety investigation. Hunt testified he reviewed the architect's drawings for the building and the engineer's site plans for the piece of land where the building was located.[4] He stated the curb ramp on the sidewalk was not constructed in accordance with the site plans because the site plans never called for the construction of a ramp. Hunt further revealed the curb ramp was also improperly constructed. Hunt explained a normal curb step height is a minimum of four inches, but the curb step height in this case was only two inches.[5] Hunt testified the curb ramp design in the margins of the site plans called for a curb ramp to be constructed on a sidewalk with a six-inch curb height or rise. He stated a curb ramp built at a six-inch curb height, with a required slope of 1:12, should have six-foot flares (flared sides with six feet of run). In this case, Hunt explained the curb height was two inches, so the flare length should have been two feet; however, the flares were actually four feet long. Hunt clarified this longer flare length was not a gradual slope but a wavy and irregularly constructed slope. He mentioned the flare of the curb that Martha tripped over protruded thirteen inches into the walking zone.[6] Hunt testified the architectural drawings called for painting the curb, and the constructed curb ramp—as part of the curb—should have also been painted.

Hunt asserted the constructed curb ramp violated the building codes and regulations cited in the architectural drawings for the Fred's project. He stated a general contractor would have the specialized knowledge and skill to read a site plan or architectural drawing and know what was called to be constructed. Hunt opined that Wildevco's representative did not have the specialized knowledge to be able to discern the construction defect in the constructed ramp. Hunt stated the defects in the constructed ramp were the direct cause of Martha's fall.

Tippins-Polk presented the testimony of Edward William Polk, the owner of Tippins-Polk. Polk explained the site plans did not call for the sidewalk to be

---

[4] Hunt testified the site plans controlled the construction of the sidewalk.

[5] Hunt explained this was important because small changes in elevation are very difficult to see and perceive.

[6] Hunt testified he was unaware of any other trip and falls at the Williston Fred's store before Martha's fall in 2010.

completely flush across the front edge. Polk testified that both the site plans and architectural drawings called for the construction of a handicap curb ramp. Polk stated the detail on the site plans with notated elevations indicated a handicap ramp should be constructed. He claimed the constructed handicap ramp complied with both the site plans and the architectural drawings. Polk asserted the "black lines" on the sidewalk in the site plans called for a handicap ramp because they "would not be there for any other purpose." At the close of the case, the circuit court denied motions for directed verdict from Fred's and Wildevco, and it denied a renewed motion for directed verdict from Tippins-Polk.[7] The circuit court took the matter under advisement.

On August 1, 2016, the circuit court issued a written order entering judgment in favor of Wildevco and Fred's. In its order, the circuit court found: (1) Tippins-Polk to be solely responsible for Martha's injuries; (2) Tippins-Polk breached its contractual obligation and its duty of care to Wildevco and Fred's in failing to construct the premises free of latent defects; (3) Fred's and Wildevco were without fault in the incident; and (4) the settlement agreement between Wildevco, Fred's, and the Fountains was reasonable and entered into without fraud or collusion. The circuit court ordered Tippins-Polk to pay $305,418.30 as indemnification for the portion of the settlement paid by Wildevco.[8] The court further ordered Tippins-Polk to pay $76,691.82 as indemnification for the portion of the settlement paid by Fred's.[9] Tippins-Polk subsequently filed a motion for reconsideration, which the circuit court denied. This appeal followed.

**ISSUES ON APPEAL**

I.   Did the circuit court err in finding there was a sufficient special relationship between Fred's and Tippins-Polk to support a claim for equitable indemnification?

---

[7] Neither party presented testimony from the architect.

[8] The circuit court arrived at this figure by adding the $250,000 Wildevco paid in the settlement with the Fountains and the $55,418.30 Wildevco claimed in legal fees and costs in defending the Fountains' claims.

[9] The circuit court arrived at this figure by adding the $40,000 Fred's paid in the settlement with the Fountains and the $36,691.82 Fred's claimed in legal fees and costs in defending the Fountains' claims and in establishing its right to indemnity.

II.     Did the circuit court err in finding Fred's and Wildevco were without fault?

III.    Did the circuit court err in failing to find that Fred's and Wildevco were estopped from recovering damages not requested within the complaint?

IV.     Did the circuit court err in awarding Fred's and Wildevco attorney's fees and costs?

V.      Did the circuit court err in refusing to consider a similar incident at a Fred's store in a neighboring county?

**STANDARD OF REVIEW**

"Equitable indemnity is an action in equity." *Walterboro Cmty. Hosp. v. Meacher*, 392 S.C. 479, 484, 709 S.E.2d 71, 73 (Ct. App. 2011). "In an action in equity tried by a judge alone, the appellate court may find facts in accordance with its view of the preponderance of the evidence." *Goldman v. RBC, Inc.*, 369 S.C. 462, 465, 632 S.E.2d 850, 851 (2006). "However, this broad scope of review does not require the appellate court to disregard the findings made below." *Id.*

**LAW/ANALYSIS**

**I.      Special Relationship**

Tippins-Polk argues the circuit court erred in finding it had a special relationship with Fred's to support a claim for equitable indemnification. We disagree.

"There are two forms of indemnity: contractual indemnity and indemnity implied in law or 'equitable indemnity.'" *Rock Hill Tel. Co. v. Globe Commc'ns., Inc.*, 363 S.C. 385, 389, 611 S.E.2d 235, 237 (2005). "Equitable indemnity . . . 'is based upon the specific relation of the indemnitee to the indemnitor in dealing with a third party.'" *Id.* (quoting James C. Gray, Jr. & Lisa D. Catt, *The Law of Indemnity in South Carolina*, 41 S.C. L. Rev. 603, 604 (1990)). Our courts "have allowed equitable indemnity in cases of imputed fault or where some special relationship exists between the first and second parties." *Inglese v. Beal*, 403 S.C. 290, 299, 742 S.E.2d 687, 691 (Ct. App. 2013) (quoting *Town of Winnsboro v. Wiedeman-Singleton, Inc.*, 303 S.C. 52, 57, 398 S.E.2d 500, 503 (Ct. App. 1990)).

In *Stuck v. Pioneer Logging Machinery, Inc.*, our supreme court discussed the existence of a special relationship stating, "a right of indemnity exists whenever the relation between the parties is such that either in law or in equity there is an obligation on one party to indemnify the other . . . ." 279 S.C. 22, 24, 301 S.E.2d 552, 553 (1983). However, our courts have specified that "there must be some kind of relationship between the parties beyond the relationship established by virtue of one party alleging that he was sued because of another party's wrongdoing." *Rock Hill Tel.*, 363 S.C. at 390 n.3, 611 S.E.2d at 237 n.3. Our courts have found a special relationship existed for the purposes of equitable indemnification between a contractor and subcontractor;[10] a purchaser of a defective vehicle and a seller;[11] a landlord and a general contractor who damaged a tenant's property;[12] a home seller and an exterminator who were both sued by a home buyer for falsely representing that the purchased home was free of termites and moisture;[13] and two former property owners who were both sued by a subsequent property owner for damage to the property.[14] Conversely, in *Rock Hill Telephone*, our supreme court found the relationship between a utility company and a general contractor's distant subcontractor was too attenuated for the purposes of an equitable indemnification claim. 363 S.C. at 390, 611 S.E.2d at 237.

This case involves the relationship between Fred's, a retail tenant, and Tippins-Polk, a general contractor who constructed the leased commercial property, the Williston Fred's store. We find Fred's presented ample evidence of a special relationship with Tippins-Polk that extended beyond Fred's mere allegation that it was sued because of Tippins-Polk's wrongdoing. Although Barber, Wildevco's construction manager for the Fred's project, testified he had never done business with Tippins-Polk before the Fred's project, he stated Tippins-Polk was recommended to Wildevco for the Fred's project because Tippins-Polk had

---

[10] *First Gen. Servs. of Charleston, Inc. v. Miller*, 314 S.C. 439, 443, 445 S.E.2d 446, 448 (1994).

[11] *Stuck*, 279 S.C. at 22, 24, 301 S.E.2d at 552–53.

[12] *Addy v. Bolton*, 257 S.C. 28, 31, 34, 183 S.E.2d 708, 708, 710 (1971).

[13] *Griffin v. Van Norman*, 302 S.C. 520, 521, 527, 397 S.E.2d 378, 378–79, 382 (Ct. App. 1990).

[14] *McCoy v. Greenwave Enters., Inc.*, 408 S.C. 355, 357–58, 361, 759 S.E.2d 136, 137, 139 (2014).

experience constructing other Fred's stores.  The construction contract between Wildevco and Tippins-Polk provided it was an agreement for the construction of "one Fred's Store."  Wildevco agreed in its lease with Fred's to "cause construction" of the store in accordance with conceptual plans Fred's provided as an attachment to the lease.

Further, Polk, the owner of Tippins-Polk, testified he knew his company was hired to build a Fred's store before construction began, and he stated his company had previously constructed ten to fifteen different Fred's stores.  Polk asserted that representatives from Fred's often visited the site during construction and examined every aspect of the building.  Polk also revealed that Tippins-Polk owned a Fred's location in a neighboring county.  Based on these facts, we find the circuit court did not err in finding a special relationship existed between Fred's and Tippins-Polk for the purposes of equitable indemnification.  Therefore, we affirm the circuit court's finding as to this issue.

## II.    Fault

Tippins-Polk argues the circuit court erred in finding Fred's and Wildevco were without fault in the underlying action.  We disagree.

"Equitable indemnity cases involve a fact pattern in which the first party is at fault, but the second party is not." *Vermeer Carolina's, Inc. v. Wood/Chuck Chipper Corp.*, 336 S.C. 53, 63, 518 S.E.2d 301, 307 (Ct. App. 1999).  "If the second party is also at fault, he comes to court without equity and has no right to indemnity." *Id.*  Therefore,

> For [Fred's and Wildevco] to recover under a theory of equitable indemnification, three things must be proven: (1) [Tippins-Polk] was liable for causing the [Fountains'] damages; (2) [Fred's and Wildevco were] exonerated from any liability for those damages; and (3) [Fred's and Wildevco] suffered damages as a result of the [Fountains'] claims against [them] which were eventually proven to be the fault of [Tippins-Polk].

*Id.*

## A.  Potential Liability

First, Tippins-Polk argues Fred's and Wildevco failed to prove they were without fault in the underlying suit because the circuit court's order noted Fred's and Wildevco were required to prove they were potentially liable to the Fountains. Tippins-Polk contends Fred's and Wildevco failed to make this showing, and even if they did, their potential liability is equivalent to fault.

Because Fred's and Wildevco sought the recovery of settlement costs from Tippins-Polk, they were also required to make an additional showing that (1) the settlement with the Fountains was bona fide, with no fraud or collusion by the parties; (2) the decision to settle with the Fountains was a reasonable means of protecting Fred's and Wildevco's interests; and (3) the amount of the settlement was reasonable in light of the Fountains' estimated damages and the risk of Fred's and Wildevco's exposure if the case was tried. *See Griffin*, 302 S.C. at 523, 397 S.E.2d at 380; *see also Otis Elevator, Inc. v. Hardin Constr. Grp., Inc.*, 316 S.C. 292, 297, 450 S.E.2d 41, 44 (1994) ("Whe[n], as here, [Fred's and Wildevco] gave [Tippins-Polk] notice and an opportunity to participate in the litigation, [Fred's and Wildevco were] not 'required to prove the plaintiff's *actual* ability to recover the amount paid in settlement so long as [Fred's and Wildevco] prov[ed] that [they] were] *potentially* liable to the [Fountains].'" (quoting 42 C.J.S. *Indemnity* § 24 (1991))).

The potential liability standard only requires the non-negligent party seeking indemnification to show that its settlement with the original plaintiffs was reasonable in means and amount in light of the original plaintiff's estimated damages and the non-negligent party's risk of loss and exposure should the case be tried. Courts that have adopted the potential liability standard have found that "[p]otential liability actually means nothing more than that the indemnitee acted reasonably in settling the underlying suit." *Trim v. Clark Equip. Co.*, 274 N.W.2d 33, 36 (Mich. Ct. App. 1978); *Pennant Serv. Co. v. True Oil Co.*, 249 P.3d 698, 706 (Wyo. 2011). Therefore, we find Fred's and Wildevco were only required to present proof of potential liability to establish the reasonableness of their settlement with the Fountains. Because Tippins-Polk did not challenge the reasonableness of the settlement between Fred's, Wildevco, and the Fountains on appeal, any finding by the circuit court related to the reasonableness of the settlement—including Wildevco and Fred's potential liability—is the law of the case.[15] *See In re Morrison*, 321 S.C. 370, 372 n.2, 468 S.E.2d 651, 652 n.2 (1996)

---

[15] We note that we are not aware of any requirement that the circuit court make a specific finding on potential liability. The circuit court made specific findings on

(noting an unappealed ruling becomes the law of the case and precludes further consideration of the issue on appeal).[16]

## B.  Latent Defect

Tippins-Polk argues the circuit court's finding that a "latent defect" caused Martha's injuries indicates the circuit court erred in not finding Fred's and Wildevco at fault.  The circuit court found Fred's and Wildevco relied on Tippins-Polk to ensure the premises was built in accordance with the architectural drawings and site plans, free from latent defects.  The circuit court also determined Tippins-Polk breached its contractual obligations and its duty of care to Wildevco and Fred's in failing to construct the premises free of latent defects.  The circuit court found these defects were the sole proximate cause of Martha's injuries.

We find the circuit court only used the term "latent" for its literal definition of hidden, not to find that Fred's and Wildevco had knowledge of or should have had knowledge of the defect.  *See Larimore v. Carolina Power & Light*, 340 S.C. 438, 445, 531 S.E.2d 535, 538 (Ct. App. 2000) ("The landowner has a duty to warn an invitee only of latent or hidden dangers of which the landowner has knowledge or should have knowledge.").  An interpretation that the circuit court used the term "latent defect" to imply Fred's and Wildevco had knowledge or should have had knowledge of the defect in this case is inconsistent with the testimony presented and the circuit court's other findings.  Hunt testified neither Fred's nor Wildevco had the specialized knowledge to discern the construction defect in the curb ramp, and the circuit court found in its order that neither Fred's nor Wildevco could have discovered the defect through inspection or maintenance.  The circuit court also determined neither Fred's nor Wildevco breached any duty to the Fountains in regards to the construction, inspection, or maintenance of the premises.  We agree with the circuit court that Fred's and Wildevco reasonably relied on Tippins-Polk, as general contractor, to construct the premises in accordance with the architectural

---

the reasonableness of the settlement that we believe encompass the meaning of potential liability as defined above.

[16] Tippins-Polk also argues an alleged underlying inconsistency exists in requiring a party to prove both absence of fault, to establish a right to indemnity, and potential liability, to recover settlement costs.  We disagree.  As explained above, potential liability means nothing more than that the indemnitee acted reasonably in settling the underlying lawsuit.  A potential liability showing is not associated with a finding of fault.

drawings and site plans and, therefore, free from any latent defects.  The construction defect in this case involved a specific issue with the dimensions and grading of a curb ramp, compliance with building codes, compliance with the Americans with Disabilities Act (ADA), and compliance with the prepared architectural drawings and site plans.  A store owner or property manager could not have discerned the defects in the curb ramp without background or experience in construction.  Therefore, based on the circuit court's findings as a whole as well as the testimony presented in this case, we find the circuit court used the term "latent" for its literal definition of hidden, not to imply that Fred's or Wildevco had knowledge of the defect.  Accordingly, we find the circuit court did not make inconsistent findings as to the nature of the defect and as to fault between the parties.

## C.  Breach of Standard of Care

Tippins-Polk argues Wildevco was at fault because it admitted that it breached a standard of care owed to the Fountains.  Based on the following evidence and testimony, we find Wildevco did not breach a standard of care owed to the Fountains.  Hunt stated owners and occupants of buildings have a duty to the public to do inspections and look for tripping hazards.  The circuit court also recognized this safety standard.  Hunt clarified that the defect in this case was a design defect that had not changed since its construction and that Wildevco relied upon Tippins-Polk to build the curb properly.  The circuit court agreed with Hunt that this safety standard did not include "looking for latent defects which [were] not in [Fred's and Wildevco's] ordinary capacity to know about."  Hunt testified Wildevo's representative did not have the specialized knowledge to be able to discern the construction defect in the ramp.  Hunt also explained an "ordinary person at a store level" conducting an inspection would not be able to identify the curb ramp as a tripping hazard.  Barber testified he conducted regular safety inspections of the exterior of the premises to observe, for example, the condition of the parking lot, and to check whether the lights were working.[17]  Tippins-Polk did not present any testimony to establish that an owner's duty to inspect the premises included inspecting for hidden design and construction defects.  The circuit court ultimately found neither Fred's nor Wildevco breached any duty to the Fountains through the construction, inspection, or maintenance of the Fred's store.  Based on

---

[17] Barber also testified he did not conduct an inspection for tripping hazards at the Fred's store.  However, the lease agreement between Fred's and Wildevco provided that Wildevco was only responsible for "keep[ing] and maintain[ing]" the exterior of the premises while Fred's was responsible for the interior of the store.

this evidence, we find Wildevco did not admit that it breached a standard of care owed to the Fountains.

## D.  Defective Plans

Tippins-Polk contends Wildevco was at fault for the Fountains' injuries because it provided defective plans.  Based on the testimony and the circuit court's findings below, we find Wildevco did not provide defective plans to Tippins-Polk.

Wildevco hired an architect to create the architectural drawings for the premises and a civil engineer to create the site plans for the premises.  Hilderbrand testified the site plans called for the building's front sidewalk to be one-tenth of a foot lower than the finished floor of the building.  Hilderbrand asserted the site plans did not call for the construction of a handicap curb ramp and that the site plans, not the architectural drawings, governed the height of sidewalk curbs.  Hilderbrand explained the site plans included a handicap ramp detail in the margins, but he testified this was a standard detail commonly put on site plans regardless of whether a ramp was actually constructed.  He stated the inclusion of the handicap ramp detail in the margins did not indicate the site plans called for the construction of a handicap ramp.  The site plans provided that the contractor should contact the engineer regarding any discrepancies discovered at the site or on the architectural drawings.  Hilderbrand testified the contractor never contacted him to discuss any discrepancies or deviations from the site plans.  Hunt testified a contractor would have the specialized knowledge and skill to read a site plan or architectural drawing and know what was called to be constructed.

Polk testified the site plans and architectural drawings clearly called for the construction of a handicap curb ramp based on the detail on the plans with notated elevations.  Polk stated the "black lines" on the sidewalk in the site plans called for a handicap ramp because they "would not be there for any other purpose."  He explained the constructed handicap ramp complied with both the site plans and the architectural drawings.  However, Polk admitted on cross-examination that the architectural drawings called for handrails to be installed but Tippins-Polk never constructed handrails at the premises.  Polk also admitted he never contacted Hilderbrand about any deviations or discrepancies from the site plans.

The circuit court found the testimony indicated possible confusion as a result of the discrepancies between the architectural drawings and the site plans.  However, the circuit court noted it was the contractor's responsibility to contact the engineer for review if any discrepancies were discovered or to request clarification of the plans.

Tippins-Polk also did not present any expert testimony to stand for the proposition that confusion in site plans or architectural drawings can render them defective. Based on this testimony and the circuit court's superior position to judge the witnesses' credibility, we find the plans Wildevco provided to Tippins-Polk were not defective. *See Goldman*, 369 S.C. at 465, 632 S.E.2d at 851 (explaining the appellate court is not required to disregard the circuit court's findings despite a broad scope of review); *Gowdy v. Gibson*, 381 S.C. 225, 233, 672 S.E.2d 794, 798 (Ct. App. 2008) (noting a circuit court's better position to judge witness credibility because it saw and heard the witnesses).

Moreover, even if we assume the plans were defective, our courts have repeatedly held that when a party, such as an architect or engineer, "'furnishes specifications and plans for a contractor to follow in a construction job, [the architect or engineer] thereby impliedly warrants their sufficiency for the purpose in view.'" *See Hill v. Polar Pantries*, 219 S.C. 263, 271, 64 S.E.2d 885, 888 (1951) (quoting 17 C.J.S. *Contracts* § 329); *see also Beachwalk Villas Condo. Ass'n, Inc. v. Martin*, 305 S.C. 144, 146, 406 S.E.2d 372, 374 (1991). In this case, however, Tippins-Polk alleges the developer, Wildevco, was responsible for providing the allegedly defective plans even though the site plans and architectural drawings were prepared by the site engineer and architect, respectively, without any input from Wildevco. Accordingly, we find Wildevco did not provide Tippins-Polk with defective plans.

### E. Barber's Qualifications

Tippins-Polk argues Wildevco was at fault because Wildevco negligently tasked Barber, who was unqualified, to oversee the construction of the Fred's store location. Tippins-Polk contends Wildevco failed to comply with the standard of care required from a developer by not hiring someone qualified to oversee the construction process.

We find Wildevco was not at fault because it appointed Barber to manage the construction of the Fred's store. Tippins-Polk has cited no authority to support its position that a property owner has a duty to hire a qualified construction overseer—in addition to the general contractor—to manage the construction of a property. To the contrary, our courts have generally held that a property owner is "not held answerable for the negligence of an independent contractor to whom he has committed the work [about such property], to be done without his control in its progress." *See Durkin v. Hansen*, 313 S.C. 343, 347, 437 S.E.2d 550, 552 (Ct. App. 1993) (quoting *Conlin v. City Council of Charleston*, 49 S.C.L. (15 Rich.) 201, 211 (1868)).

Indeed, our examination of the evidence in the record shows Tippins-Polk, as general contractor, had the duty to oversee and manage the construction of the premises, as opposed to Barber and Wildevco. Polk stated his company was responsible for ensuring the premises was constructed in accordance with the site plans, architectural drawings, and building codes. Barber explained that Wildevco hired Tippins-Polk because of its expertise and specific knowledge from constructing other Fred's locations. The circuit court found Barber had no education or formal training in construction, engineering, or architecture. Barber testified his management of the premises' construction included hiring the architect, site engineer, and general contractor. He stated Wildevco did not take part in the preparation of the architectural drawings or site plans, nor did it have any input in how Tippins-Polk would construct the premises. Polk explained Tippins-Polk, as the construction manager and general contractor, would "go behind" the subcontractors to ensure the architectural drawings and site plans were followed. Polk stated the county building inspectors often came out during the construction process to inspect the premises, and Barber would visit the site during these inspections to "check for completion and verify pay requests." Barber testified Tippins-Polk requested the final inspection and certificate of occupancy from the county building inspector. Based on this evidence and testimony, we find Wildevco was not at fault for hiring Barber to manage the construction of the Fred's location because Wildevco had no duty to hire a qualified construction overseer in addition to a general contractor.

Based on the foregoing, we affirm the circuit court's finding that neither Fred's nor Wildevco were at fault in the underlying action.[18]

## III.   Bound by Relief Sought in Pleadings

---

[18] Tippins-Polk also argues the settlement agreement between Wildevco, Fred's, and the Fountains acknowledged that Fred's and Wildevco were liable for the Fountains' injuries. On November 29, 2017, this court issued an order striking the settlement agreement from the record on appeal in this case based on Rule 210(c), SCACR because the settlement agreement was never presented to the circuit court. Because the parties failed to present the settlement agreement to the circuit court and the settlement agreement is not part of the record on appeal, we find this argument is not preserved for this court's review. *See Elam v. S.C. Dep't of Transp.*, 361 S.C. 9, 23, 602 S.E.2d 772, 779–80 (2004) ("Issues and arguments are preserved for appellate review only when they are raised to and ruled on by the [circuit] court.").

Tippins-Polk argues the circuit court erred in awarding Fred's and Wildevco relief not requested in their pleadings. We disagree.

Rule 8, SCRCP outlines the required contents for pleadings and states in subsection (f) that "[a]ll pleadings shall be so construed as to do substantial justice to all parties." In order to achieve substantial justice for all parties, our courts have determined that pleadings should be construed liberally. *See Russell v. City of Columbia*, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991). This court has also explained that "[i]t is the substance of the requested relief that matters 'regardless of the form in which the request for relief was framed.'" *Richland County v. Kaiser*, 351 S.C. 89, 94, 567 S.E.2d 260, 262 (Ct. App. 2002) (quoting *Standard Fed. Sav. & Loan Ass'n v. Mungo*, 306 S.C. 22, 26, 410 S.E.2d 18, 20 (Ct. App. 1991)). Indeed, our supreme court has "repeatedly held that the plaintiff may obtain any relief appropriate to the case made by the pleadings and the evidence, without regard to the *form* of the prayer for relief . . . ." *Beaty v. Mass. Protective Ass'n*, 160 S.C. 205, 207, 158 S.E. 206, 207 (1931). "Especially is this true in an equity case." *Id.*

In this case, Fred's made the following prayer for relief in its third-party complaint against Tippins-Polk:

> judgment over and against [Tippins-Polk] for all or part of any verdict or judgment which may be recovered by the [Fountains] directly or indirectly against [Fred's], together with its costs and disbursements herein. Further in the alternative [Fred's] pray[s] that [Tippins-Polk] be ordered to contribute toward the satisfaction of any verdict or judgment obtained by the [Fountains] under their [c]omplaint, and for such other and further relief as the [c]ourt would deem just and proper.

Wildevco made the following prayer for relief in its third-party complaint against Tippins-Polk:

> judgment over and against [Tippins-Polk] for all or part of any verdict or judgment that may be recovered by the [Fountains] directly or indirectly against [Wildevco], together with costs and disbursements herein, as well as for all damages sustained by [Wildevco], including

attorneys' fees and costs, and for such other and further
relief as the [c]ourt would deem just and proper.

Tippins-Polk contends Fred's and Wildevco only sought an award of a "judgment or verdict" but not the settlement costs from their settlement with the Fountains. Tippins-Polk has failed to provide authority for its position that Fred's and Wildevco were required to explicitly request payment of settlement costs as part of their relief sought against Tippins-Polk.

Construing Fred's and Wildevco's pleadings liberally, we find the circuit court did not award relief to Fred's and Wildevco that fell outside the relief sought in their respective complaints. *See id.* ("[T]he plaintiff may obtain any relief appropriate to the case made by the pleadings and the evidence . . . ."). Fred's prayed for a judgment against Tippins-Polk for all or part of any verdict or judgment that may be recovered by the Fountains against Fred's. The circuit court issued a Form 4 order on March 21, 2016, granting Fred's and Wildevco's motion for a continuance that included the following statement of judgment: "The main case settled with [the Fountains]." We find this order can be liberally construed as a statement of judgment for the Fountains from which Fred's can recover against Tippins-Polk. Fred's stated in its complaint that it was entitled to full and complete indemnity from Tippins-Polk "including being indemnified for the costs and attorneys' fees associated with defending this civil action [brought by the Fountains]." We find "costs . . . associated with defending this civil action" included the costs of a potential settlement. Fred's also included the statement in its prayer for relief "and for such other and further relief as the [c]ourt would deem just and proper." We find a liberal construction of this sentence in Fred's prayer supports the circuit court's award. Similarly, Wildevco's prayer for relief included requests for "all damages sustained" and "for such other and further relief as the [c]ourt would deem just and proper." We find a liberal construction of these requests in Wildevco's prayer supports the circuit court's award. *See Griffin*, 302 S.C. at 521–22, 397 S.E.2d at 379 (awarding a non-negligent party settlement costs in an equitable indemnification action when the party requested in its prayer for relief that the at-fault party be held responsible for any damages suffered by the non-negligent party); *Kaiser*, 351 S.C. at 94, 567 S.E.2d at 262 ("It is the substance of the requested relief that matters 'regardless of the form in which the request for relief was framed.'" (quoting *Mungo*, 306 S.C. at 26, 410 S.E.2d at 20)); *Russell*, 305 S.C. at 89, 406 S.E.2d at 339 (finding pleadings must be construed liberally to do substantial justice to all parties). Therefore, we affirm the circuit court's decision as to this issue.

## IV. Attorney's Fees

Alternatively, Tippins-Polk argues the circuit court erred in awarding attorney's fees to Fred's and Wildevco. Specifically, Tippins-Polk asserts a difference exists between awarding attorney's fees to Fred's and Wildevco for fees incurred in defending the Fountains' underlying claim and fees incurred in establishing their right to equitable indemnification against Tippins-Polk. We agree.

In an equitable indemnification action, attorney's fees and costs proximately resulting from the at-fault party's breach of contract or negligence are treated as the legal consequences of the at-fault party's original wrongful act and may be recovered as damages. *See Town of Winnsboro v. Wiedeman-Singleton, Inc.*, 307 S.C. 128, 130, 414 S.E.2d 118, 120 (1992); *Addy*, 257 S.C. at 33, 183 S.E.2d at 710.

> In order to recover attorneys' fees under this principle, [Fred's and Wildevco] must show: (1) that [Fred's and Wildevco became] involved in a legal dispute . . . because of [Tippins-Polk]'s tortious conduct; (2) that the dispute was with a third party—not with [Tippins-Polk]; and (3) that [Fred's and Wildevco] incurred attorneys' fees connected with that dispute.

*Addy*, 257 S.C. at 33, 183 S.E.2d at 709–10 (quoting 22 Am. Jur. (2d), *Damages*, § 166). Our courts have also determined that in equitable indemnification actions, attorney's fees that are "the natural and necessary consequence of the [at-fault party's] act" and attributable solely to the negligence of the at-fault party are only recoverable "when there is a sufficient relationship between the [at-fault party and the non-negligent party]." *Town of Winnsboro*, 307 S.C. at 132, 414 S.E.2d at 121. "A sufficient relationship exists when the at-fault party's negligence . . . is directed at the non-[negligent] party and the non-[negligent] party incurs attorney fees and costs in defending itself against the [at-fault party]'s conduct." *Id.*

In this case, both Fred's and Wildevco presented attorney's fees and cost affidavits for the circuit court's review. Fred's presented an invoice requesting $36,691.82 in litigation fees, costs, and expenses but did not break down its bills to distinguish between actions undertaken in the defense of the Fountains' suit and actions undertaken to advance the third-party claim Fred's brought against Tippins-Polk. The circuit court awarded Fred's $76,691.82 as to its equitable indemnification claim, which included the $40,000 settlement it paid to the Fountains and the

$36,691.82 it requested in attorney's fees. Conversely, Wildevco presented an invoice requesting $55,418.30 in litigation fees, costs, and expenses. Wildevco's invoice reflected that it omitted all fees that it incurred in pursuit of its third-party claim against Tippins-Polk. Wildevco also reduced the amount of fees and costs it incurred that involved both the defense of the Fountains' claims and the prosecution of its third-party action against Tippins-Polk by fifty percent. The circuit court awarded Wildevco $305,418.30 as to its equitable indemnification claim, which included the $250,000 settlement it paid to the Fountains and the $55,418.30 it requested in attorney's fees.

Initially, we note Tippins-Polk does not challenge Fred's and Wildevco's right to recover attorney's fees under the requirements in *Addy*; rather, Tippins-Polk solely asserts the circuit court erred in awarding Fred's and Wildevco fees incurred from both defending the Fountains' underlying lawsuit and from establishing Fred's and Wildevco's right to equitable indemnification against Tippins-Polk when only attorney's fees for defending an equitable indemnification claim were recoverable. Although our courts have not yet recognized this distinction in equitable indemnification claims, we do so here.

Our courts have repeatedly awarded attorney's fees as part of a non-negligent party's damages against an at-fault party in an equitable indemnification action. *See McCoy*, 408 S.C. at 361, 759 S.E.2d at 139 ("Appellants are entitled to equitable indemnification for the attorney's fees and costs that they incurred in defending the lawsuit brought by the [third party]."); *Town of Winnsboro*, 307 S.C. at 131, 414 S.E.2d at 120 (affirming the court of appeals decision allowing equitable indemnification for attorney's fees and costs expended in "defending the negligence of [the sub-contractor]"); *Addy*, 257 S.C. at 33, 183 S.E.2d at 710 (finding reasonable attorney's fees incurred in "resisting the claim indemnified against" may be recovered as damages). In these cases, our courts have awarded attorney's fees as damages only when a non-negligent party incurred necessary expenses in *defending* its interests in a lawsuit brought by a third-party. *See Town of Winnsboro*, 307 S.C. at 131, 414 S.E.2d at 120.

The majority of jurisdictions around the country have adopted the rule that the right of indemnity includes the right to attorney's fees and litigation costs incurred in defending the underlying claim, but it does not extend to fees and costs incurred in establishing the right of indemnity.[19] In other words, a non-negligent party can

---

[19] *See Peter Fabrics, Inc. v. S.S. Hermes*, 765 F.2d 306, 315 (2nd Cir. 1985); *Simko v. C & C Marine Maint. Co.*, 594 F.2d 960, 969 (3rd Cir. 1979); *Am. Exp. Lines v.*

recover as damages the fees and costs it incurred in defending against a plaintiff's claims, but it cannot recover the fees and costs it incurred in pursuing a third-party equitable indemnification claim against the at-fault party.  Requiring an at-fault party to hold a non-negligent party harmless for the costs associated with defending a plaintiff's claims "gives effect to the very nature of indemnity, which is to make the party whole." *E.C. Ernst, Inc. v. Manhattan Constr. Co. of Tex.*, 551 F.2d 1026, 1037 (5th Cir. 1977).  However, the same reasoning does not support a party's recovery of the fees and costs incurred in establishing a right to indemnity because these fees and costs are not coupled with the claim indemnified against. Rather, these are fees and costs incurred as a result of a non-negligent party's decision to bring a separate claim to establish the right to indemnity.  Therefore, we find the fees and costs incurred in establishing an indemnity obligation fall within the standard "American" rule, which requires a party to bear his own expenses of litigation.  *See Layman v. State*, 376 S.C. 434, 451, 658 S.E.2d 320, 329 (2008).  This court has defined "expenses" under the *Addy* rule as "any costs which are reasonably necessary to *defend* litigation or otherwise protect the innocent party's interest."  *Griffin*, 302 S.C. at 523, 397 S.E.2d at 380 (emphasis added).  We also find this rule is in accordance with South Carolina's rule that, with limited exceptions, "[a]ttorney's fees are not recoverable unless authorized by contract or statute." *Jackson v. Speed*, 326 S.C. 289, 307, 486 S.E.2d 750, 759 (1997).  This rule also squares with our current equitable indemnification jurisprudence that has only permitted recovery for attorney's fees and costs incurred in "defending" or "resisting" the claim indemnified against.  *See McCoy*, 408 S.C. at 361, 759 S.E.2d at 139; *Town of Winnsboro*, 307 S.C. at 131, 414 S.E.2d at 120; *Addy*, 257 S.C. at 33–34, 183 S.E.2d at 709–10.  Therefore, we adopt the rule that the right of indemnity in *equitable indemnification cases* includes the right to attorney's fees and litigation costs incurred in defending the

---

*Norfolk Shipbuilding & Drydock Corp.*, 336 F.2d 525, 527 (4th Cir. 1964) (allowing a non-negligent party to be indemnified for the costs of defending the plaintiff's lawsuit but not the costs of defending the at-fault party's appeal); *Lusich v. Bloomfield S.S. Co.*, 355 F.2d 770, 776 (5th Cir. 1966); *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 491 F.2d 192, 198 n.9 (8th Cir. 1974); *Vallejos v. C.E. Glass Co.*, 583 F.2d 507, 510 (10th Cir. 1978); *Ins. Co. of N. Am. v. M/V Ocean Lynx*, 901 F.2d 934, 941 (11th Cir. 1990) ("[T]he indemnitee can recover attorneys' fees from his indemnitor as part of the reasonable expenses of *defending* a claim." (emphasis added)); 42 C.J.S. *Indemnity* § 44 (2019); *but cf. Dillingham Shipyard v. Associated Insulation Co.*, 649 F.2d 1322, 1328 (9th Cir. 1981).

underlying claim, but it does not extend to fees and costs incurred in establishing the right of indemnity.

Therefore, we reverse the circuit court's decision to award attorney's fees to Fred's for both defending the Fountains' underlying claims and establishing its right to indemnity from Tippins-Polk. We remand this case to the circuit court to (1) order Fred's to reasonably apportion its invoice to only seek as damages those fees and costs associated with its defense of the Fountains' underlying claims and (2) award Fred's fees and costs that reflect this reasonable apportionment.

Because Wildevco only sought those fees and costs related to its defense of the Fountains' underlying claims, we affirm the circuit court's $55,418.30 award of fees and costs to Wildevco.

## V.     Evidence of Similar Incidents

Tippins-Polk argues the circuit court abused its discretion in failing to admit evidence of a prior similar accident that occurred at a Fred's store in a neighboring county. We disagree.

"A ruling on the admission of evidence is within the sound discretion of the [circuit court] and will not be disturbed absent an abuse of discretion and a showing of prejudice." *Oconee Roller Mills, Inc. v. Spitzer*, 300 S.C. 358, 360, 387 S.E.2d 718, 719 (Ct. App. 1990). "Evidence of similar accidents, transactions, or happenings is admissible in South Carolina whe[n] there is some special relation between them tending to prove or disprove some fact in dispute." *Whaley v. CSX Transp., Inc.*, 362 S.C. 456, 483, 609 S.E.2d 286, 300 (2005). "This rule is based on relevancy, logic, and common sense." *Watson v. Ford Motor Co.*, 389 S.C. 434, 453, 699 S.E.2d 169, 179 (2010). "Because evidence of other accidents may be highly prejudicial, '[a party] must present a factual foundation for the court to determine that the other accidents were substantially similar to the accident at issue.'" *Whaley*, 362 S.C. at 483, 609 S.E.2d at 300 (quoting *Buckman v. Bombardier Corp.*, 893 F. Supp. 547, 552 (E.D.N.C. 1995)).

In *Pope v. Heritage Communities, Inc.*, this court addressed whether the circuit court erred in admitting evidence of construction defects at a development company's other condominium properties similar to the defects at the condominium at issue in the lawsuit. 395 S.C. 404, 426–28, 717 S.E.2d 765, 777–78 (Ct. App. 2011). In *Pope*, the architect hired to develop the plans for the condominium at issue testified he used the same basic plans in the company's other

developments that were experiencing defects. *Id.* at 427, 717 S.E.2d at 777. The development company's president testified the company's other properties were experiencing defects similar to the problems at the subject condominium. *Id.* The general contractor expert for the development company stated he had been involved in "four or five" cases involving the company's condominium properties. *Id.* at 428, 717 S.E.2d at 777–78. The engineering and construction defect expert for the subject condominium testified he prepared reports on the scope of work at the company's other condominium properties. *Id.* at 428, 717 S.E.2d at 778. Finally, the development company's expert witness stated he was hired to investigate the company's other properties and found similar defects. *Id.* at 428, 717 S.E.2d at 777. This court ultimately found the defects at the development company's other properties were substantially similar to the defects at the subject property and affirmed the circuit court's decision to admit the evidence. *Id.* at 428, 717 S.E.2d at 778.

Unlike the ample proof in *Pope*, we find the evidence in this case failed to show the other accident was substantially similar to Martha's accident. In this case, Tippins-Polk sought to show that Fred's had notice of the potential tripping hazard. Specifically, Tippins-Polk sought to admit evidence that the Fred's store in Varnville put up bollards, a warning sign, and painted the curb outside the store because of a similar accident that occurred approximately three months prior to Martha's fall. The only similarities Tippins-Polk presented between the accident at the Varnville store and the accident in this case are the manner of the fall—tripping on a curb—and the location of the fall—outside of a Fred's store. Tippins-Polk did not attempt to admit or proffer any evidence about the construction of the curb ramp at the Varnville store, the type of curb ramp, or the ramp's measurements and slope. Although Tippins-Polk sought to admit that Fred's had prior knowledge of the curb defect, Tippins-Polk also never attempted to admit or proffer any evidence of who actually installed the additional safety features at the Varnville store or why they were installed. The lease agreement between Fred's and Wildevco also provided that Wildevco—not Fred's—would maintain the exterior of the premises, including the curbs. Therefore, even if Fred's was on notice of this potential hazard from the fall at the Varnville store, it had no obligation to repair what the parties delineated in the lease as Wildevco's responsibility. Most importantly, the Varnville store was constructed using a different architect with different architectural drawings and a different engineer with different site plans. Therefore, we find Tippins-Polk failed to present evidence of *substantial* similarity between the two accidents to overcome the highly prejudicial effect of admitting such evidence. *See Whaley*, 362 S.C. at 483, 609 S.E.2d at 300 ("Because evidence of other accidents may be highly prejudicial, '[a party] must present a factual

foundation for the court to determine that the other accidents were substantially similar to the accident at issue.'" (quoting *Buckman*, 893 F. Supp. at 552)). Accordingly, we affirm the circuit court's decision on this issue. *See Spitzer*, 300 S.C. at 360, 387 S.E.2d at 719 ("A ruling on the admission of evidence is within the sound discretion of the [circuit court] and will not be disturbed absent an abuse of discretion and a showing of prejudice.").

**CONCLUSION**

Based on the foregoing, we **AFFIRM** the circuit court's order as to all issues except the award of attorney's fees and costs to Fred's. We **REVERSE** the circuit court's award of attorney's fees and costs to Fred's only and **REMAND** this case to the circuit court for further proceedings solely on the issue of Fred's award of attorney's fees and costs.

**GEATHERS and HILL, JJ., concur.**